PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254

Prisoner's Name:                          Reinaldo Javier Rivera

Prisoner's Number:                        UNO-1155294

Place of Confinement:                     Georgia Diagnostic Prison
                                          Jackson, Georgia 30233


IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

REINALDO JAVIER RIVERA,        )
     Petitioner,                )
                               )
vs.                            )        Civil Case No. _____
                               )
WARDEN,                        )        **THIS IS A CAPITAL CASE**
Georgia Diagnostic Prison,     )
     Respondent.                )

**<u>PETITION FOR WRIT OF HABEAS CORPUS BY A
PERSON IN STATE CUSTODY</u>**


Brian S. Kammer (Ga. 406322)
Georgia Resource Center
303 Elizabeth Street, NE
Atlanta, GA 30307
404-222-9202
Fax: 404-222-9212
grc@garesource.org

ON BEHALF OF PETITIONER

# **TABLE OF CONTENTS**

PROCEDURAL HISTORY..................................................................3

CLAIMS FOR RELIEF .................................................................5

**Claim One:**      Petitioner Was Deprived Of His Right To The Effective Assistance Of Counsel At Trial And On Appeal, In Violation Of His Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution, Strickland v. Washington, 466 U.S. 668 (1984) And Related Precedent...................................5

**Claim Two:**      Misconduct By The Prosecution Team And Other State Agents Deprived Petitioner Of His Constitutional Rights To Due Process A Fair Trial, and a Reliable and Proportionate Sentence, In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution. .................................................17

**Claim Three:**    Misconduct On The Part Of The Jurors Violated Petitioner's Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution...................................................23

**Claim Four:**     The Trial Court's Improper Rulings And Other Errors Deprived Petitioner Of A Fair Trial And Reliable Sentencing, In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution..................................................25

**Claim Five:**     Petitioner Was Denied Due Process Of Law By The Instructions Given To The Jury At Both Phases Of His Capital Trial, In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution..................................................31

i

**Claim Six:**      The Death Penalty In Georgia Is Imposed Arbitrarily And Capriciously And Amounts To Cruel And Unusual Punishment, Violating Petitioner's Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution. ......................................................33

PRAYER FOR RELIEF ............................................................................39

NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE ........42

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

REINALDO JAVIER RIVERA,    )
      Petitioner,          )
                              )
vs.                        )     Civil Case No. _____
                              )
WARDEN,               )     **THIS IS A CAPITAL CASE**
Georgia Diagnostic Prison,    )
      Respondent.         )

## <u>PETITION FOR WRIT OF HABEAS CORPUS<br>BY A PERSON IN STATE CUSTODY</u>

Comes now the Petitioner, REINALDO JAVIER RIVERA, by and through

undersigned counsel, and invokes this Court's jurisdiction pursuant to 28 U.S.C. §

1331 and 28 U.S.C. § 2254.

1.     This petition follows the form established by the Model Form for Use

in Applications for Habeas Corpus under 28 U.S.C. § 2254, prescribed by the

Rules Governing § 2254 Cases in United States District Courts.   It pleads

Petitioner's claims for relief and alleges the constitutional errors raised.   In

conformity with the form and practice, the petition does not make detailed legal

argument, address procedural issues or affirmative defenses that the Respondent

may choose to raise, or analyze in any detail the state court decisions under the

provisions of 28 U.S.C. § 2254(d) and (e).  Petitioner shall respond in memoranda

of law to any procedural issues the Respondent may raise as affirmative defenses

and shall submit briefing on the merits of the claims properly before the court which will include analysis under § 2254(d) and (e).

2.     This petition states claims that have been raised in state courts in exhaustion of state remedies.   However, the investigation and research of Petitioner's case continues, and he may seek permission of the Court to amend, correct or modify the claims based upon the result of this continued investigation and research.

3.     Petitioner is indigent and was so found by the Georgia state courts during trial, direct appeal and state post-conviction proceedings.   Petitioner requests leave to proceed *in forma pauperis* in this proceeding via motion filed herewith.

4.     Petitioner seeks relief in the form of an order granting the writ of habeas corpus as to his conviction and death sentence, and granting all other relief which the Court may deem just, proper and equitable.   Petitioner submits that the state court convictions, death sentence, and affirmances on direct appeal and in state habeas corpus proceedings resulted from violations of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.   Petitioner contends that the state courts' findings are contrary to and/or an unreasonable application of clearly established federal law as determined

2

by the United States Supreme Court; involved an unreasonable determination of the facts in light of the evidence; and/or involved the unreasonable and arbitrary denial of relief.  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

## **PROCEDURAL HISTORY**

5.     Petitioner is a person in the custody of the State of Georgia.  The name and location of the court which entered the judgment of conviction and sentence under attack are: Superior Court of Richmond County in Augusta, Georgia in the Augusta Judicial Circuit.

6.     The date of the judgment of conviction was January 23, 2004, and the date of sentence was January 26, 2004. Petitioner was convicted of malice murder, three counts of rape, four counts of aggravated sodomy, four counts of aggravated assault, burglary, and possession of a knife during commission of a crime. Petitioner was sentenced to death on the charge of malice murder.  In addition to the death sentence, Petitioner was sentenced to three consecutive life sentences on rape charges, four consecutive life sentences on aggravated sodomy charges, four twenty-year consecutive sentences on aggravated assault charges, twenty years of consecutive confinement on the burglary charge, and five years of consecutive confinement on the charge of possessing a knife during the commission of a crime.

7.     At his trial, Petitioner pled not guilty and the trial on the issue of guilt or innocence and on the issue of sentencing was determined by a jury.  Petitioner testified in both phases of his trial.

8.     Petitioner appealed his convictions and sentences of death. The Supreme Court of Georgia affirmed Petitioner's conviction and sentence of death on June 25, 2007.  Rivera v. State, 282 Ga. 355, 647 S.E. 2d 70 (2007).  A timely filed motion for reconsideration was denied on July 27, 2007.

9.     On November 7, 2008, Petitioner filed a Petition for a Writ of Habeas Corpus in the Superior Court of Butts County and amended that petition on December 4, 2009.  Petitioner was granted leave to proceed *in forma pauperis*.

10.    After an evidentiary hearing and submission of post-hearing briefs, the state habeas court denied the writ as to Petitioner's conviction and sentence on March 31, 2011.  Petitioner's Application to the Georgia Supreme Court for Certificate of Probable Cause to Appeal was granted on February 27, 2012 and the case was remanded to the state habeas court for a hearing on Mr. Rivera's competency.

11.    On remand, Petitioner expressly denied that he desired to withdraw his habeas corpus petition.  The habeas court issued a supplemental order again denying his habeas claims on August 3, 2012.  Petitioner again applied to the

4

Georgia Supreme Court for a certificate of probable cause to appeal, which the Georgia Supreme Court denied on September 9, 2013.

12. This Petition follows.

## CLAIMS FOR RELIEF

13. Each claim for relief raised below is predicated on the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and on other law set forth in the Petition.

**Claim One:** **Petitioner Was Deprived Of His Right To The Effective Assistance Of Counsel At Trial And On Appeal, In Violation Of His Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution, Strickland v. Washington, 466 U.S. 668 (1984) And Related Precedent.**

14. All other claims and allegations in this Petition are incorporated into this Claim by this reference.

15. Petitioner was denied his right to the effective assistance of counsel at his capital trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. See also, Strickland v. Washington, 466 U.S. 688 (1984); Williams v. Taylor, 529 U.S. 362 (2000); Wiggins v. Smith, 539 U.S. 510 (2003); Rompilla v. Beard, 545 U.S. 374 (2005); Porter v. McCollum, 130

S.Ct. 447 (2009); <u>Sears v. Upton</u>, 130 S.Ct. 3259 (2010).  Counsel's ineffectiveness at trial includes, but is not limited to the following:

      a)    Counsel failed to conduct an adequate pretrial investigation into the State's case and defenses available to Petitioner, including but not limited to the psychological, medical and psychiatric factors affecting Petitioner's mental state during, before, and after the offense;

      b)    Counsel failed to make adequate and timely requests for continuances in order to prepare for trial and failed to make use of time available to adequately investigate and prepare for trial;

      c)    Counsel failed to make timely requests for the assistance of investigative support, particularly the assistance of a mitigation investigator or mitigation expert, so that counsel could have conducted a thorough and adequate pretrial investigation into Mr. Rivera's background and available defenses at both phases of trial. The resulting information would have been relevant and critical to the jury's guilt and sentencing decisions;

      d)    Counsel failed to adequately use the investigative tools and services to which counsel had access and counsel failed to present material evidence that was reasonably available to counsel during Petitioner's guilt/innocence and aggravation/mitigation trials;

e)    Counsel failed to utilize evidence in counsel's possession to marshal a meaningful and mitigating defense during Petitioner's capital trial;

f)    Counsel failed to adequately employ and utilize an independent mental health expert to which Petitioner was entitled under <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985);

g)    Counsel failed to conduct an adequate pretrial investigation into Petitioner's life and background to uncover and present to the jury evidence in mitigation of punishment;

h)    Counsel failed to present a complete picture of Petitioner's background, including history of being abused sexually, emotionally, and physically;

i)    Counsel failed to conduct an adequate pretrial investigation into Petitioner's life and background to uncover and present to the jury evidence in mitigation of punishment, failed to present a complete picture of Petitioner's background, and failed to locate, interview, and present as witnesses numerous individuals who had compelling mitigating evidence regarding Petitioner, as well as provide background information which would have served as the basis of mitigating expert mental health testimony both at the guilt innocence and penalty phases of trial. As a result, the jury failed to hear compelling additional evidence

7

pertaining to Petitioner's mental health status which would have been both mitigating and consistent with a Guilty But Mentally Ill verdict, as well as mitigating evidence, including, for example, detailed testimony relating to Petitioner's dysfunctional home life, neglect and abuse; the conditions of his upbringing and the conditions at the schools he attended; the relevance of Petitioner's family history of mental illness and addiction; Petitioner's full mental health diagnosis; and Petitioner's remorsefulness.  See Wiggins v. Smith, 123 S.Ct. 2527 (2003); Rompilla v. Beard, 125 S.Ct. 2456 (2005).  "[C]ompetent counsel ... present[s] and explain[s] the significance of *all the available evidence* [in mitigation]."  Williams, 120 S.Ct. at 1516 (italics supplied).  "'By failing to provide such evidence to the jury, though readily available, trial counsel's deficient performance prejudice[s a petitioner's] ability to receive an individualized sentence.'"  Brownlee v. Haley, 306 F.3d 1043, 1074 (11th Cir. 2002) (alterations in original) (quoting Cunningham v. Zant, 928 F.2d 1006, 1019 (11th Cir.1991)).

      j)    Counsel failed to "[i]dentify with the defendant and help the jury identify with the defendant," and engaged in behaviors that diminished the Petitioner in front of the jury. Waters v. Thomas, 46 F. 3d 1506, 1536 (11th Cir. 1995) (J. Clark dissenting).

k)      Counsel remained on Petitioner's case despite professional conflicts that breached their duty of loyalty to their client;

l)      Counsel failed to obtain and review all records, files, and evidence in the possession of the State to which Petitioner was entitled;

m)      Counsel failed to pursue and develop investigative leads or "red flags," as a result of which, no reasonable assessment of mitigating factors dealing with Petitioner's early life, family dysfunction, history of abuse, depression, bi-polar disorder and efforts to self-medicate throughout his life was ever done.  This information would have been relevant and critical to the jury's guilt and sentencing decisions.  See Rompilla v. Beard, 125 S.Ct. 2456, 2468-69 (2005).

n)      Trial counsel unreasonably failed to adequately prepare their mental health experts for their roles and testimony in the case.  Trial counsel failed to provide the mental health experts with available background information, i.e., regarding Petitioner's life history, which would have allowed the expert to offer informed, credible and mitigating testimony regarding Petitioner's behavior and mental health status at the time of the crimes.  Turpin v. Bennett, 272 Ga. 57, 525 S.E.2d 354 (2000);

o)      Counsel failed to adequately supervise and offer input to the expert witnesses to ensure that available leads and "red flags" were followed up

9

and all reasonably available evidence which could have supported the defense at either phase of trial was appropriately developed.  Terry v. Jenkins, 280 Ga. 341, 627 S.E.2d 7 (2006); Rompilla v. Beard, supra;

       p)     Counsel failed adequately to litigate the suppression of Petitioner's pretrial statements to police;

       q)     Counsel focused on and presented a Guilty But Mentally Ill defense at the guilt-innocence phase which focused on anti-social personality disorder, involved the presentation of evidence which ran contrary to Georgia statutory requirements for a finding of mental illness under O.C.G.A. §17-7-131 and was obviously extremely aggravating in terms of its effect on sentencing deliberations, while failing to support that defense with readily available evidence of his severe yet treatable mental illness (such as bipolar disorder);

       r)     Counsel failed to support the chosen defense by securing the services of necessary experts with whom counsel could have effectively challenged the State's case against Petitioner and introduced and explained significant and compelling mitigation;

       s)     Counsel unreasonably failed to take adequate steps to negotiate a plea agreement, including failing to thoroughly investigate the circumstances of the offense and Petitioner's background prior to trial;

t)      Counsel failed to present arguments to the jury which adequately and meaningfully discussed the evidence and set forth reasons for the jury to find Petitioner Guilty but Mentally Ill or to impose a sentence less than death;

u)      Counsel failed to adequately cross-examine the State's witnesses, including but not limited to the failure to impeach, the failure to explore questions of bias and motive on the part of the witnesses, and the failure to correct or prevent false testimony;

v)      Counsel failed to make adequate or timely objections to the prosecutor's injection of prejudicial hearsay into cross-examination questions and in closing argument, including but not limited to testimony procured in violation of the federal and Georgia constitutions; and failed to object to improper and prejudicial comments and mischaracterization of evidence at closing argument at the guilt-innocence and sentencing phases of trial;

w)      Counsel failed to adequately object to the prosecutor's use of impermissible inferences during closing argument and failed to adequately argue any motion for a mistrial.

x)      Counsel failed to prepare for and conduct an adequate examination of potential jurors with regard to their understanding of the

11

presumption of innocence, potential bias regarding the death penalty and other issues during voir dire in order to ensure Petitioner's right to a fair trial and reliable sentencing; failed to adequately challenge the trial court's improper excusal of certain jurors for hardship reasons; failed to adequately challenge the trial court's improper voir dire of potential jurors; failed to challenge the trial court's refusal to excuse certain jurors for cause; failed to adequately challenge the district attorney's improper voir dire, and generally failed adequately to protect Petitioner's right to a jury pool and jury which adequately represented the community and which could afford Petitioner the fair trial and reliable sentencing to which he was entitled under the federal and Georgia constitutions;

y)      Counsel failed to fully litigate a motion for Change of Venue and failed to protect Petitioner's right to be tried in an impartial forum;

z)      Counsel improperly waived and/or failed to adequately argue issues of Petitioner's competency to stand trial;

aa)      Trial counsel failed to adequately monitor the conditions of Petitioner's confinement by the State before and during trial and failed to argue adequately for amelioration of these conditions.   The conditions under which Petitioner was held negatively affected his mental health, his relationship with trial counsel, and his ability to assist in his own defense.

bb)     Counsel failed to demand and/or improperly waived Petitioner's right to demand that the jurors be sequestered and sheltered from press coverage of the trial, as well as any other prejudicial outside influences during the pendency of the trial;

cc)     Counsel failed to object to the admission of several items of evidence, including in-life photos of the victims, and testimony offered by the State during the guilt and sentencing phases of trial. Timely and adequately argued objections would have insured that certain improper evidence was not received and considered by the jury;

dd)     Counsel failed to adequately argue for the exclusion of similar transaction evidence and failed to object adequately to its admission at trial;

ee)     Counsel improperly abandoned their representation of Petitioner at various times throughout the course of the trial and/or failed to effectively prevent and object to Petitioner being forced into self-representation and hybrid representation by the trial court;

ff)     Counsel erred by speaking to the press about Petitioner in a way that breached the duties of loyalty and confidentiality that they owed to their client;

13

gg)    Counsel failed to propose and argue effectively for favorable jury instructions, to which Petitioner was entitled, to be given by the trial court to the jury at the conclusion of the guilt and penalty phases of the trial;

hh)    Counsel failed to raise proper and timely objections to improper charges given by the trial court to the jury at the conclusion of the guilt-innocence and sentencing phases of trial;

ii)    Counsel forfeited Petitioner's right to poll the jury and ensure the unanimity of each verdict and sentence;

jj)    Counsel failed to make adequate and timely requests for continuances in order to prepare for trial and failed to make use of time available to adequately investigate and prepare for trial;

kk)    Counsel failed to make requests for investigative assistance so that counsel could have conducted a thorough and adequate pretrial investigation into available defenses at both phases of trial;

ll)    Had trial counsel performed competently, there is a reasonable probability that "at least one juror would have struck a different balance" in determining the appropriate verdict or punishment for Petitioner.  Wiggins v. Smith, 539 U.S. 510 (2003).

14

mm)   Counsel provided prejudicially deficient performance at the motion for new trial stage and on direct appeal by failing to thoroughly review the trial transcript and effectively prepare legal pleadings addressing the errors at trial.

nn)   Counsel failed to ensure that a full transcript of the trial was available for review by the trial court and thereafter transmitted to the Georgia Supreme Court for review on direct appeal. O.C.G.A. §§5-6-41 and 17-8-5(a).  As a result, Petitioner was deprived of due process and the comprehensive and reliable adjudication of the constitutionality of his convictions and sentences to which he was entitled;

oo)   Petioner was entitled to have reasonably effective representation at his motion for new trial, as well as on direct appeal.  Penson v. Ohio, 488 U.S. 75 (1988); Evitts v. Lucey, 469 U.S. 387 (1985); Laughton v. Whitley, 905 F.2d 885 (5th Cir. 1990).  Yet counsel failed to raise meritorious issues on direct appeal as a result of their unreasonable failure to fully research, raise, brief and support with evidence the claims that could and should have been raised based on the errors that occurred during Petitioner's capital trial. Petitioner was thus denied the right to effective assistance of counsel in these critical stages of his criminal proceedings;

15

pp)    Trial counsel were ineffective  at the motion for new trial and on appeal in failing to prepare a competent or complete evidentiary presentation at motion for new trial and on appeal.  Failure to review the record and to know the applicable law is performance that falls below an objective standard of reasonableness.  See, e.g., Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (appellate advocate may deliver deficient performance and prejudice a defendant by omitting a "dead bang winner" claim) (citation omitted).  Counsel's failure to litigate facts and law which would, within reasonable probability, have resulted in reversal of Petitioner's conviction or sentence was unreasonable and constitutes deficient performance;

qq)    Counsel failed to locate, interview, and present as witnesses numerous individuals who had compelling mitigating evidence regarding Petitioner;

16.    Counsel's inadequate preparation and investigation at all phases of trial and appeal were due to counsel's unreasonable omissions, unreasonable schedule, and the withholding of evidence by the state.

17.    Counsel's unreasonable actions and omissions at the culpability and sentencing phases of trial prejudiced the outcomes of both the culpability and sentencing phases of Petitioner's capital trial.   But for counsel's ineffective

16

representation, there is a reasonable probability that the result of each phase of trial, and the appeal, would have been different.

18.    But for counsel's ineffective representation, there is a reasonable probability that the result of each phase of trial, and the appeal, would have been different.  See Strickland v. Washington, 466 U.S. 688 (1984); Williams v. Taylor, 529 U.S. 362 (2000).

**Claim Two:**          **Misconduct By The Prosecution Team And Other State Agents Deprived Petitioner Of His Constitutional Rights To Due Process A Fair Trial, and a Reliable and Proportionate Sentence, In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.[1]**

19.     All other claims and allegations in this Petition are incorporated into this Claim by this reference.

20.    Petitioner's rights to due process, a fair trial, and a reliable sentence were violated by improper and prejudicial remarks by the prosecution in its argument at the guilt/innocence and sentencing phases of the trial, in contravention of Article I, § 1, ¶¶ 1, 2, 11, 12, 14 & 17 of the Constitution of the State of

---

[1] To the extent that the factual basis for any of these claims was available to defense counsel and defense counsel failed to raise an objection or to litigate the claim on appeal, counsel rendered prejudicially deficient performance.

Georgia, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[2]

21.     The jury bailiff's and/or sheriff's deputies and/or other State agents who interacted with jurors engaged in improper communications with jurors which deprived Petitioner of a fair trial and reliable sentencing.   See, e.g., Turner v. Louisiana, 379 U.S. 466 (1965).[3]

22.     The State suppressed information favorable to the defense at both phases of the trial, and the materiality of the suppressed evidence undermines confidence in the outcome of the guilt/innocence and penalty phases of Petitioner's trial, and Petitioner's direct appeal, in violation of Brady v. Maryland, 373 U .S. 667 (1965), and Kyles v . Whitley, 514 U.S. 419 (1995).   The State has a continuing obligation to disclose favorable evidence, which extends through

---

[2] To the extent Petitioner's counsel failed to object to these improper comments and seek a mistrial or other appropriate relief, or to otherwise preserve objections to the State's argument and effectively present claims based on that argument in Petitioner's direct appeal, counsel were ineffective, and Petitioner was prejudiced thereby.   To the extent the Court attempted to cure the improper comments by instructing the jury, the Court's instructions failed to cure the error and actually exacerbated it by drawing the jury's attention to the improper comments.   The trial court improperly failed to correct these errors on its own motion.   To the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance.

[3] To the extent the factual basis for this claim was available to defense counsel and counsel failed to raise and litigate this claim at trial or on appeal, counsel rendered deficient performance and Petitioner was actually prejudiced thereby.   To the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance.

postconviction proceedings, and the State may be continuing to withhold favorable evidence from Petitioner. Thomas v. Goldsmith, 979 F .2d 746, 749-50 (9th Cir. 1992).   The State took advantage of Petitioner's ignorance of the undisclosed favorable information by arguing to the fact-finder that which it knew or should have known to be false and/or misleading.   United States v. Sanfilippo, 564 F.2d 176, 179 (5th Cir. 1977).   The State allowed its witnesses to convey a false impression to the fact-finder, and there is a reasonable likelihood that the false impression could have affected the fact-finder.   Giglio v. United States, 405 U .S. 150 (1972).   The State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court/fact-finder at both phases of the trial.   Napue v. Illinois, 360 U.S. 264 (1959); United States v. Agurs, 427 U.S. 97, 103 (1976).   Regardless of whether the State knew or should have known that it was presenting false evidence, the mere presentation of such evidence and the fact-finder's reliance upon such evidence at both phases of the trial deprived Petitioner of due process.   Sanders v . Sullivan, 863 F .2d 218 (2d Cir. 1988).   This state misconduct violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[4]

---

[4] To the extent that the suppressed favorable evidence might have been available to

23.     State agents improperly discouraged Petitioner from seeking the advice of counsel before questioning through a variety of coercive tactics, including, but not limited to: warning Petitioner that it would take a while for counsel to be appointed; approaching and interrogating Petitioner while he was still medicated and in the hospital with serious injuries, ignoring Petitioner's compromised medical and mental states and using Petitioner's concern for his family against him.  As a result, Petitioner's statements to police were obtained in violation of the Constitution.  Arizona v. Fulminante, 499 U.S. 279, 302 (1991); Jackson v. Denno, 378 U.S. 368 (1964).  Because the police interrogators' original unconstitutional interrogation taints the remainder of Petitioner's statements to police, Petitioner's statements warranted suppression. Wong Sun v. U.S., 371 U.S. 471, 485 (1963); Mapp v. Ohio, 367 U.S. 643, 655 (1961). Because a state agent failed to disclose the predicate evidence for Petitioner's suppression claim, counsel were rendered ineffective in their litigation of the suppression issue.  But

---

Petitioner, but his prior counsel failed to obtain and effectively utilize the information, counsel was ineffective.  Because the suppressed favorable evidence creates a reasonable probability of a different outcome at Petitioner's trial and sentencing proceedings, Petitioner was prejudiced by the deficient performance of counsel in this regard.  To the extent counsel failed to raise and litigate this issue on appeal, counsel rendered prejudicially deficient performance.

for the suppression of the predicate evidence of the statements' unconstitutionality, there is a reasonable likelihood that Petitioner's statements would have been suppressed, as well as any evidence flowing from the tainted inculpatory statements.  Consequently, there is a reasonable probability that the outcome of either phase of trial would have been different.  Petitioner is entitled to a new trial and/or sentencing;

24.     The State failed to ensure that a complete transcript was filed with the Superior Court after Petitioner's conviction and subsequently transmitted to the Georgia Supreme Court. <u>Wade v. State</u>, 231 Ga. 131, 133 (1973).  Consequently, Petitioner was deprived of due process and the comprehensive and reliable review of his convictions and sentences to which he was entitled;

25.     The State, in closing arguments during the sentencing phase of Mr. Rivera's case, made improper, inflammatory remarks that were not based in any evidence adduced at trial.  For example, the prosecutor improperly asked the jury, "Whose daughter will it be next time?," frightening the jury and essentially threatening them with another death if they chose not to vote for Mr. Rivera's execution, although no evidence was adduced by the prosecution that Mr. Rivera could not be safely housed by the Department of Corrections. This improper rhetorical question went beyond the permissible bounds of argument, undermined

21

the impartiality of Mr. Rivera's jury, and violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution;

26.    The conditions of confinement under which Petitioner was held and questioned prior to, and during, the time of trial by the State negatively affected his mental health, interfered with his relationship with trial counsel, and diminished his ability to assist with his own defense, depriving the Petitioner of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and analogous provisions of the Georgia Constitution.  Culombe v. Connecticut, 367 U.S. 568 (1961);

27.    This misconduct violated due process, rendered Petitioner's trial and sentencing proceedings unfair, and resulted in an unreliable death sentence, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Claim Three:**       **Misconduct On The Part Of The Jurors Violated Petitioner's Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.[5]**

28.     All other claims and allegations in this Petition are incorporated into this Claim by this reference.

29.     Misconduct on the part of the jurors included, but was not limited to, improper consideration of matters extraneous to the trial, false or misleading responses of jurors on voir dire, failure to reveal U.S. citizenship status, serving on a jury while not a citizen of the U.S., harboring improper biases which infected deliberations, putting undue pressure on individual jurors to vote for death, exploiting individual jurors' inability to fully understand or read and write the English language in order to pressure them to vote for death, improper exposure to the prejudicial opinions of third parties, improper communications with third parties, improper communication with jury bailiffs, improper ex parte communications with the trial judge, and improperly prejudging the

---

[5] To the extent that Petitioner's counsel failed to protect Petitioner's rights in this regard, trial counsel's performance was unreasonably deficient, and Petitioner was prejudiced by the deficiencies of his counsel.  To the extent that the trial court was implicated in or aware of any of the jury misconduct, and yet failed to advise Petitioner's counsel or correct the misconduct, the court's actions constitute an independent violation of Petitioner's rights.  To the extent that the State, through any of its entities, was implicated in or aware of any of the jury misconduct, the State's action (or failure to act) also deprived Petitioner of his constitutional rights.

guilt/innocence and penalty phases of Petitioner's trial.[6]   See e.g., Spencer v. Georgia, 500 U.S. 960 (1991) (Kennedy, J., concurring in denial of cert.) (racial epithets used in jury room); McCleskey v. Kemp. 481 U.S. 279 (1987) (racial animus of decision makers); Moore v. State, 172 Ga.App. 844, 324 S.E.2d 760 (1984) (jury consideration of extraneous legal research); Jones v. Kemp, 706 F.Supp. 1534 (N.D.Ga. 1989) (jury consideration of extraneous religious information); Turner v. Louisiana, 379 U.S. 466 (1965) (improper communications with bailiffs); Rushen v. Spain, 464 U.S. 114 (1983) (improper communications with trial judge); United States v. Scott, 854 F.2d 697, 700 (5th Cir. 1988) (failure to respond truthfully on voir dire); Radford v. State, 263 Ga. 47, 426 S.E.2d 868 (1993) (improper communications with bailiffs); Turpin v. Todd, 268 Ga. 820, 493 S.E.2d 900 (1997) (same).[7]

---

[6] To the extent that Petitioner's counsel failed to protect Petitioner's rights in this regard, counsel's performance was unreasonably deficient, and Petitioner was prejudiced by the deficiencies of his counsel.  To the extent that the trial court was implicated in or aware of any of the jury misconduct, and yet failed to advise Petitioner or correct the misconduct, the court's actions constitute an independent violation of Petitioner's rights.  To the extent that the State, through any of its entities, was implicated in or aware of any of the jury misconduct, the State's action (or failure to act) also deprived Petitioner of his constitutional rights.

[7] To the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, and Petitioner was prejudiced thereby.  To the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance.

24

30.    This misconduct rendered Petitioner's trial unconstitutional and his conviction and death sentence unreliable.   The jury's misconduct violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Claim Four:**         **The Trial Court's Improper Rulings And Other Errors Deprived Petitioner Of A Fair Trial And Reliable Sentencing, In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution.[8]**

31.    All other claims and allegations in this Petition are incorporated into this Claim by this reference.

32.    Errors committed by the trial court include, but are not limited to:

a)        The trial court improperly failed to strike for cause several venirepersons whose attitudes towards the death penalty would have prevented or substantially impaired their performance as jurors. The trial court erred by phrasing its voir dire question in a manner that suggested to jurors who gave neutral responses that they were or should be in favor of the death penalty.  The court erred in its rulings on motions to challenge prospective jurors for cause based on their attitudes about the death penalty and stated biases, engaged in improper voir

---

[8] To the extent trial counsel failed to raise and litigate these issues at trial or on appeal, counsel was ineffective and Petitioner was prejudiced thereby.

dire, and allowed fair and impartial jurors to be struck for cause.[9]  <u>Witherspoon v.</u> <u>Illinois</u>, 391 U.S. 510 (1968); <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985).  The court's errors in this regard deprived Petitioner of a fair and impartial jury, in violation of Petitioner's rights under Art. the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

b)     The trial court excused potential jurors or moved them to the back of the venire for improper reasons under the rubric of "hardship;"

c)     The trial court erroneously removed a juror from service and replaced her with an alternate juror;

d)     The trial court erred in not ensuring that Petitioner was competent to assist in his own defense in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

---

[9] To the extent that the trial court's failure to strike for cause was due to the failure of previous counsel to move the court to strike particular venirepersons, the failure to strike was due to the failure of trial counsel to perform effectively in this regard.  A reasonable probability exists that, had counsel performed effectively, the jury would have been drawn from a more impartial pool, and the outcome of Petitioner's capital trial and sentencing would have been different.  To the extent that trial counsel failed to effectively move the court to strike incompetent jurors, that failure was unreasonably deficient performance by counsel, and Petitioner was prejudiced by counsel's failure.  To the extent counsel failed to provide the court with adequate argument in favor of retaining jurors who leaned against the death penalty, counsel rendered prejudicially deficient performance.  To the extent appellate counsel failed to adequately litigate trial counsel's ineffectiveness at motion for new trial or direct appeal, appellate counsel rendered prejudicially ineffective assistance.

e)      The trial court erred in admitting various items of prejudicial, unreliable, unsubstantiated and irrelevant evidence tendered by the state at either phase of trial, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

f)      The trial court erred in admitting "similar transaction" evidence, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

g)      The trial court erred in admitting Petitioner's unconstitutionally obtained statements to police which, among other problems, were involuntary and obtained in violation of Petitioner's Fifth and Sixth Amendment rights to counsel;

h)      The trial court erred in limiting the cross-examination of prosecution witnesses by Petitioner, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

i)      The trial court erred by impermissibly limiting Petitioner's counsel's arguments regarding the efficacy of the death penalty as a deterrent during his closing argument to the jury, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

27

j)      The trial court erred by coercing the jury's sentencing verdict in this matter in violation of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments;

k)      The trial court erred in allowing the prosecution to introduce improper, unreliable and irrelevant evidence in aggravation at sentencing, as well as evidence of which the defense had not been provided adequate notice and which had been concealed from the defense, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

l)      The trial court erred by allowing impermissible and inflammatory in-life pictures of the decedent in this case to be introduced into evidence during the sentencing phase of Mr. Rivera's trial, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

m)      The trial court erred in failing to require the State to disclose certain items of evidence or witnesses in a timely manner so as to afford the defense an opportunity to conduct an adequate investigation, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

n)      The trial court erred in failing to require the State to disclose certain items of evidence of an exculpatory or impeaching nature to the defense, in

28

violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

o)      The trial court erred by improperly limiting argument, as well as the cross-examination and direct examination of witnesses in both the guilt-innocence and penalty phases of trial, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

p)      The trial court improperly excluded admissible expert testimony, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

q)      The trial court failed to provide adequate funding and time to allow trial counsel to marshal a defense, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

r)      The trial court forced Petitioner to self-represent or engage in hybrid representation during portions of the trial to his prejudice and detriment, in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

s)      The trial court failed to sequester the jury in this case;

t)      The trial court issued erroneous jury instructions that prejudiced the Petitioner at the guilt-innocence and penalty phases of trial, in violation of his

29

rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

u)     The trial court failed to ensure that a complete transcript of the proceedings were transmitted to the Georgia Supreme Court for direct appeal at the close of trial. Unified Appeal, R. IV(A)(1), O.C.G.A. § 17-8-5(a).  As a result, Petitioner was deprived of due process and a fair and reliable direct appeal in which encompassed review of the entire record of the trial. Wilson v. State, 246 Ga. 672, 675 (1980).  A new direct appeal is required. Montgomery v. Tremblay, 249 Ga. 483, 484 (1982);

v)     The trial court made other improper rulings, failed to maintain an impartial judicial demeanor, and otherwise conducted the trial in such a way as to deprive Petitioner of a fair trial and reliable sentencing, in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and analogous provisions of the Georgia Constitution.[10]

---

[10] To the extent that prior counsel failed adequately to litigate and/or make timely objections with regard to the above-described claims, or to raise them adequately at motion for new trial or direct appeal, counsel rendered prejudicially deficient performance.  To the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance.

**Claim Five:**       **Petitioner Was Denied Due Process Of Law By The Instructions Given To The Jury At Both Phases Of His Capital Trial, In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.[11]**

33.      All other claims and allegations in this Petition are incorporated into this Claim by this reference.

34.      Under the Eighth Amendment, "death is a 'punishment different from all other sanctions, "' <u>Booth v. Maryland</u>, 107 S.Ct. 2529, 2536 n.12 (1987) (quoting <u>Woodson v. North Carolina</u>, 428 U.S. 280, 303-04 (1976). Accordingly, the United States Supreme Court has recognized that, under the Eighth Amendment and state law, sentencers' require "different," *i.e.,* especially clear, instructions at the penalty phase of a capital trial. See <u>Penry v. Lynaugh</u>, 109 S.Ct. 2934 (1989) (requiring special instructions about mental retardation): <u>Mills v. Maryland</u>, 108 S.Ct. 1860 (1987) (invalidating instructions on mitigating circumstances which "reasonable jurors" could have misunderstood); <u>Maynard v. Cartwright</u>, 108 S.Ct. 1853 (1988) (invalidating vague instructions on a statutory aggravating circumstance): <u>Godfrey v. Georgia</u>, 446 U.S. 420 (1980) (requiring limiting instructions about Georgia's aggravating circumstance that murder was

---

[11] To the extent that counsel failed to raise or litigate this issue effectively during trial, counsel's deficient performance was unreasonable and Petitioner was prejudiced thereby.

"outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim").

35.    The jury instructions given by the trial court at sentencing impermissibly shifted the burden of proof from the prosecution to Mr. Rivera. Francis v. Franklin, 471 U.S. 307 (1985). In particular, the trial court's instructions regarding intent and presumption of sound mind required Mr. Rivera to disprove his sanity at the time of the crimes, creating an impermissible mandatory rebuttable presumption that Mr. Rivera was unconstitutionally required to overcome at trial;

36.    The trial court's instructions at sentencing violated Petitioner's right to due process and a fair and reliable sentencing determination in that they failed, *inter alia*, to adequately guide the jurors' discretion, failed to adequately explain the meaning and purpose of mitigating circumstances, failed to adequately explain to the jury that aggravating circumstances must be found beyond a reasonable doubt but that mitigating circumstances need not be, and failed to adequately explain that only a death verdict must be unanimous, but that each individual juror may vote for life regardless of how the other jurors vote.  The court's generally vague, misleading and improper instructions mandate relief. [12]

---

[12] To the extent that Petitioner's counsel failed adequately to preserve objections to the trial court's charges or effectively litigate these issues on appeal, Petitioner's counsel rendered

32

37.   The jury instructions at both phases of the trial in this case, both individually and collectively, were ambiguous, insufficient, vague, and confusing, contrary to law and the jurors' decisions based upon these instructions are unreliable, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

**Claim Six:**  **The Death Penalty In Georgia Is Imposed Arbitrarily And Capriciously And Amounts To Cruel And Unusual Punishment, Violating Petitioner's Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.[13]**

35.   All other allegations in this Petition are incorporated herein by this reference.

36.   Petitioner's sentence of death was imposed arbitrarily and capriciously, and pursuant to a pattern and practice of discrimination in the administration and imposition of the death penalty in Georgia, thereby rendering Petitioner's sentence of death unlawful and in violation of Petitioner's rights under

---

ineffective assistance.  Had counsel performed reasonably, there is a reasonable probability that the outcome of the guilt/innocence phase of trial would have been different.  To the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance.

[13] To the extent trial counsel failed to raise and litigate this issue at trial or appeal, counsel was ineffective and Petitioner was prejudiced thereby.

the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The grounds for this claim include, but are not limited to, the following:

   a. Georgia's statutory death penalty procedures, as applied, do not result in fair, nondiscriminatory or proportional imposition of the death sentence, and therefore violate the Eighth Amendment to the United States Constitution;

   b. The death penalty is imposed arbitrarily, capriciously, and discriminatorily in the State of Georgia, and was so imposed in Petitioner's case;

   c. Georgia cases similar to that of Petitioner with regard to both the nature and circumstances of the offense, prior record, culpability and life and character of the accused, have resulted in lesser punishments than death;

   d. Georgia cases more aggravated than that of Petitioner with regard to both the nature and circumstances of the offense, prior record, culpability, and life and character of the accused, have resulted in lesser punishments than death;

   e. There is no constitutionally permissible way to distinguish the few cases in which the death penalty has been imposed, and Petitioner's case in particular, from the many similar cases in which a lesser punishment has been imposed;

f.     There exists in Georgia a pattern and practice of prosecuting authorities, courts, and juries to discriminate on the basis of race, gender, and poverty in deciding whether to seek or impose the death penalty in cases similar to that of Petitioner, thereby making the imposition of the sentence of death against Petitioner a violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

g.     Execution by means of lethal injection constitutes cruel and unusual punishment in that it involves pain, suffering, and bodily mutilation, including destruction of internal organs.

38.   Since Furman v. Georgia, 408 U.S. 238, 310, 313 (1972) (Stewart, J. concurring, White, J., concurring), the United States Supreme Court has required states that permit capital punishment to institute procedures that protect against the "wanton" and "freakish" imposition of the death penalty and provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not."  In overturning a Florida death sentence on what amounted to proportionality grounds, the United States Supreme Court noted:

> "If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." Spaziano v. Florida, 468 U.S. 447, 460 (1984).  The

> Constitution prohibits the arbitrary or irrational imposition of the death penalty.  Id., at 466-467.  We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally.  *See,* e.g., Clemons v. Mississippi, 494 U.S. 738, 749 (1990)] (citing cases); Gregg v. Georgia, 428 U.S. 153 (1976).

Parker v. Dugger, 498 U.S. 308, 321 (1991).

39.   While a proportionality review is not constitutionally required where it is not part of the state's statutory scheme for fair imposition of the death penalty, Pulley v. Harris, 465 U.S. 37 (1984), in Georgia, a proportionality review is such a statutory requirement, and one of the pillars of reliability in sentencing used by the Supreme Court to uphold the Georgia death statute in Gregg v. Georgia, 428 U.S. 153 (1976); O.C.G.A. § 17-10-35(c)(3).  The Court has noted that it "will not affirm a sentence of death unless in similar cases throughout the state the death penalty has been imposed generally and not wantonly and freakishly."  Horton v. State, 249 Ga. 871, 295 S.E.2d 281, 289 (1982), *cert. denied*, 459 U.S. 1188 (1983).

40.   The proportionality review conducted in the State of Georgia is constitutionally infirm in general and as applied.  See Walker v. Georgia, 129 S.Ct. 453 (2008) (Stevens, J., statement respecting denial of certiorari).

41.     The review performed in Petitioner's case was improper because it was performed without the benefit of a complete trial transcript.   The Georgia Supreme Court has noted that it "will not affirm a sentence of death unless in similar cases throughout the state the death penalty has been imposed generally and not wantonly and freakishly."  Horton v. State, 249 Ga. 871, 295 S.E.2d 281, 289 (1982), cert. denied, 459 U.S. 1188 (1983).   This standard is impossible to determine without a full transcript.

42.     The constitutional mandate against disproportionate sentencing does not merely require that the Georgia Supreme Court be able to find other instances in which the death penalty is applied to similar facts, but rather, to view the state system as a whole to see that sentences are proportionate across the spectrum. There are many other murders much more excessive and aggravated than that for which Petitioner has received a sentence of death, yet the defendants in those case received life sentences or less.  These life sentences were never considered by the Georgia Supreme Court in its proportionality review. If the list is broadened to include all cases where death has occurred, this Court will see further evidence that far more heinous, torturous, and aggravated murders have resulted in life sentences.

37

43.    The goal of proportionality review is that similarly situated defendants receive similar sentences, that the process be rational and not capricious, and that the ultimate sentence which the State can exact from a criminal be reserved for the most severe of murders.  That is why the death penalty should be precluded in this case.  A death sentence on this record would be clearly arbitrary and capricious by failing to distinguish why Petitioner deserves a death sentence, when compared to other more culpable defendants who received life imprisonment despite committing more aggravated crimes with less mitigating evidence, despite long histories of criminal misconduct, and despite far more direct and overwhelming evidence of actual guilt.   Accordingly, this Court should reverse Petitioner's sentence of death.

44.    Furthermore, the application of Georgia's aggravating circumstance under O.C.G.A. Sec. 17-10-30(B)(7), "that the offense of murder was outrageously and wantonly vile, horrible or inhuman in that it involved an aggravated battery to the victim," is not only in violation of Petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution on the basis of the United States Supreme Court decisions in Maynard v. Cartwright, 108 S.Ct. 1853 (1988) and Godfrey v. Georgia, 446 U.S. 420 (1980), but also based upon inaccurate evidence.

38

45.     The denial of meaningful and adequate review is demonstrated by the substantial dissimilarity between Petitioner's case and the cases cited by the Georgia Supreme Court.   Rivera v. State, 273 Ga. 183, 187-88, 538 S.E.2d 55 (2000).   Since those cases involved facts and circumstances unlike the facts and circumstances of Petitioner's case, the Georgia Supreme Court was not warranted in finding that Petitioner's death sentence was not excessive.   In its opinion, the Georgia Supreme Court summarily stated, that Petitioner's "sentence of death was neither excessive nor disproportionate to penalties imposed in similar cases."   The Court held Petitioner's sentence to be proportionate, citing eighteen cases in its proportionality analysis.   The Georgia Supreme Court did not articulate what facts of the crime and the defendant were "similar," nor why the sentence was not disproportionate to that of Petitioner's co-defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully prays that this Court:

1.     Review the claims alleged in this Petition on the merits;

2.     Issue a Writ of Habeas Corpus to have Petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint, and/or be relieved of his unconstitutional sentence of death;

3.     Permit Petitioner, who is indigent, to proceed *in forma pauperis*;

4.     Grant Petitioner, who is indigent, sufficient funds to secure the expert and investigative assistance necessary to prove the facts as alleged in this petition;

5.     Grant Petitioner the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary to prove the facts as alleged in this petition;

6.     Allow discovery, pursuant to Rule 6, Rules Governing Section 2254 Cases In the United States District Court;

7.     Conduct a hearing at which proof may be offered concerning the allegations of this petition;

8.     Allow Petitioner to amend his petition after the assistance of experts and discovery, and in the event of any other changes in the law or facts relevant to his case;

9.     Allow Petitioner to brief the merits of his claims based on the precedential and statutory law relevant to his case in light of the record and the allegations raised by this petition;

10.     Allow Petitioner to respond to any procedural or affirmative defenses, and to any other arguments that the Respondent might raise in this action; and

11.     Grant such other relief as may be appropriate.

This 9th day of September, 2013.

Respectfully submitted,

_____
Brian S. Kammer (Ga. 406322)
Georgia Resource Center
303 Elizabeth Street, NE
Atlanta, GA 30307
404-222-9202
Fax: 404-222-9212
Email: grc@garesource.org

COUNSEL FOR PETITIONER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

REINALDO JAVIER RIVERA,       )
     Petitioner,               )
                         )
vs.                           )     Civil Case No. _____
                         )
WARDEN,                       )     **THIS IS A CAPITAL CASE**
Georgia Diagnostic Prison,    )
     Respondent.               )

## NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

This is to certify that on September 9, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system which will send notification of such filing to the following: Dana Weinberger (dweinberger@law.ga.gov). I also certify that I have served the foregoing document and this notice of electronic filing on Respondent this day by electronic mail directed to:

       Dana Weinberger
       Assistant Attorney General
       dweinberger@law.ga.gov

       _____
       Brian S. Kammer (Ga. 406322)
       Georgia Resource Center
       303 Elizabeth Street, NE
       Atlanta, GA 30307
       404-222-9202
       grc@garesource.org