IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| REINALDO JAVIER RIVERA, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | CV 113-161 |
| | * | |
| CARL HUMPHREY, Warden, | * | |
| Georgia Diagnostic and | * | |
| Classification State Prison, | * | |
| | * | |
| Respondent. | * | |

## O R D E R

Now before the Court is Petitioner Reinaldo Javier Rivera's Motion for Discovery (Doc. 56) and Motion for an Evidentiary Hearing (Doc. 57). As to discovery, Mr. Rivera seeks to subpoena incident files and any other documentation within the possession of St. John's Abbey — an Order of the Catholic Church — to support the claim that his trial counsel was ineffective in failing to conduct adequate investigation into his background, particularly whether he was a victim of sexual abuse as a child. With his request for an evidentiary hearing, Mr. Rivera wishes to present the testimony of Dr. David Lisak ("Dr. Lisak"), a psychologist. Mr. Rivera contends that the state habeas court unreasonably refused to accommodate Dr. Lisak's limited availability and would not allow him to testify live. Upon due consideration, Mr. Rivera's Motion for Discovery and Motion for an Evidentiary Hearing are hereby **DENIED**.

## I. **Background**

Following a jury trial in the Superior Court of Richmond County, Georgia, Mr. Rivera was convicted of one count of malice murder, three counts of rape, four counts of aggravated sodomy, four counts of aggravated assault, one count of possession of a knife during the commission of a crime, and one count of burglary. (Doc. 29, Ex. 1I at 27; Id., Ex. 1A at 12-19.)[1] Because Mr. Rivera's pending motions address only the testimony of Dr. Lisak and any evidence regarding Mr. Rivera's alleged childhood sexual abuse as they pertain to his ineffective assistance of counsel claim, the Court limits its recitation of facts to those issues only. For a more detailed description of Mr. Rivera's crimes, see Rivera v. State, 647 S.E.2d 70, 73-74 (Ga. 2007).

### A. **Mr. Rivera's Trial and Direct Appeal**

At trial, Mr. Rivera was represented by Peter Johnson and Jacque Hawk (collectively, "defense counsel"). Prior to trial, defense counsel had Mr. Rivera evaluated by Dr. Lisak, a professor at the University of Massachusetts who specialized in childhood abuse, violence in men, sexual aggression, and homicide. (Doc. 31, Ex. 78 at 137, 140.) Dr. Lisak evaluated Mr. Rivera on three occasions and also met with Mr. Rivera's wife, mother, and sister. (Id. at 141-42.) Dr. Lisak's report to trial counsel concluded that

---

[1] The Court's references to the record reflect the pagination input by CM/ECF, the Court's filing system.

2

[m]any aspects of Mr. Rivera's sexual history, most notably his extremely sexually compulsive behavior, represents classic symptoms of childhood sexual abuse. However, Mr. Rivera has no memory of any sexual abuse and I uncovered no other evidence of such abuse. It is certainly possible that Mr. Rivera was abused but currently has no conscious access to the memories of that abuse. If Mr. Rivera was, in fact, sexually abused, one of the more likely places where this might have occurred would be at the private, religious schools he attended as a child. His sister recalled that there were whisperings of sexual misconduct at these schools; however, Mr. Rivera adamantly denied that any abuse occurred there.

(Id. at 142 (testimony of Mr. Johnson reading a portion of Dr. Lisak's report following his evaluation of Mr. Rivera).) Mr. Johnson testified that he never considered traveling to Puerto Rico, where Mr. Rivera attended school as a child, because he "didn't know what [he] was looking for." (Id. at 186.) And while Mr. Johnson testified that he "actually believed that there was some sort of unnatural relationship between [Mr. Rivera] and his father[,]" Mr. Rivera did not "act like a victim" and "at that point . . . it was all speculation and [he] just did not go there." (Id.) For trial, defense counsel decided against calling Dr. Lisak as a witness because Dr. Lisak told Mr. Johnson "that [defense counsel] did not want him in the state of Georgia when this case comes to trial" and "that [Mr. Rivera] was a . . . classic psychopath with no redeeming values." (Id. at 144.) Indeed, Mr. Johnson recalled "fighting with" the judge and district attorney because he did not want to reveal Dr. Lisak's identity because he imagined the prosecution "wanted [defense counsel] to tell them that there was an expert who decided that [Mr.] Rivera was a

3

psychopath . . . ." (Id. at 145.) At that point, defense counsel sought additional funds to hire a new expert, because they "came to realize . . . that [Dr. Lisak] believed [Mr. Rivera] was a psychopath" and "did not accept the idea that [Mr. Rivera's] very apparent sexual addiction could be seen as mitigating evidence," and Dr. Lisak was simply "not a good fit for this case." (Doc. 35, Ex. 107A at 110-11.)

At the guilt/innocence phase of the trial, defense counsel presented the testimony of Dr. Thomas Sachy, a neuropsychiatrist who diagnosed Mr. Rivera with psychopathy or antisocial personality disorder with significant sadistic sexual behavior that was "significantly influenced by [] brain dysfunction." (Doc. 30, Ex. 20 at 4, 72-74.) Dr. Sachy also opined that Mr. Rivera suffered from obsessive-compulsive disorder, in that he had an "obsession with violent deviate sexual acts committed on women." (Id. at 74.) Defense counsel also called Dr. Marc Einhorn, a psychologist specializing in neuropsychology, whose examinations of Mr. Rivera resulted in a finding that he was "a psychopathic sexual sadist[.]" (Id. at 141, 152-58.) As a third witness, defense counsel called Mr. Geral Blanchard, a counselor specializing in sexual violence. (Doc. 30, Ex. 21 at 40-42.) Mr. Blanchard testified about Mr. Rivera's exposure to violent pornography as a child and Mr. Rivera's addictive sexual behavior. (Id. at 46-52.) Mr. Blanchard opined that Mr. Rivera was a "level four sex addict," which is characterized by lust murder and serial killing. (Id. at 54.) At

this phase of the trial, Mr. Rivera also testified very candidly regarding his past childhood and sexual experiences. (Id. at 102-16.) In particular, Mr. Rivera recognized with hindsight that his experiences with patrons of a porn theater in Puerto Rico as a young teenager would qualify as sexual abuse. (Id. at 116.)

During the sentencing phase, Mr. Rivera's defense counsel presented the testimony of Mr. Rivera's sister, Gloria Rivera (Doc. 30, Ex. 24 at 48); Dr. Amy Blanchard, a physician at the Medical College of Georgia who treated Mr. Rivera following a Tylenol overdose (Id. at 130-32); Investigator Greg Newsome (Id. at 137-44); Dr. Matthew Ciechan, from whom Mr. Rivera sought treatment for sexual addiction (Id. at 147-50); Pastor Steve Hartman, who testified that Mr. Rivera admitted his sexual addiction and was "seeking some type of forgiveness" (Id. at 152-55); and Dr. Nathan Pino, a sociology and anthropology professor who testified that Mr. Rivera offered himself up for research to try and explain his behavior (Id. at 162-65).

Following the testimony at the sentencing phase, the jury found the following statutory aggravating circumstances existed to impose the death penalty: the murder of Marni Glista (1) was committed while Mr. Rivera was engaged in the commission of another capital felony; (2) was committed while Mr. Rivera was engaged in the commission of aggravated battery; and (3) was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." (Doc.

29, Ex. 1I at 28.) With these findings, the jury recommended a sentence of death. (Id. at 29.)

Mr. Rivera appealed his conviction to the Supreme Court of Georgia, which affirmed the conviction and sentence on June 25, 2007. Rivera, 647 S.E.2d 70. A motion for reconsideration filed by Mr. Rivera was also denied. (Doc. 30, Ex. 34.)

**B. State Habeas Proceedings and the Georgia Supreme Court's Denial of Mr. Rivera's Certificate of Probable Cause**

Mr. Rivera filed a state habeas corpus petition in the Superior Court of Butts County (the "state habeas court" or "habeas court") on November 7, 2008.[2] Once the discovery period on Mr. Rivera's petition concluded, the Honorable William A. Fears wrote a letter to the parties' counsel dated December 10, 2009 suggesting dates for an evidentiary hearing. (Doc. 31, Ex. 70 at 15.) Judge Fears initially suggested several dates in February 2010. (Id.) Upon a reminder that Petitioner's counsel would be on maternity leave at that time, the habeas court suggested dates in May 2010. (Id. at 17.) Mr. Rivera's counsel responded that dates between May 20 and May 26, 2010 would be acceptable. (Id. at 19.) The court

---

[2] At the outset, the Court notes that Mr. Rivera has repeatedly expressed his desire to not file any appeals. (Doc. 37, Ex. 138 at 2.) Indeed, Mr. Rivera has on a number of occasions attempted to proceed pro se. (Id.) At the risk of stating facts out of order, the Georgia Supreme Court, following the denial of Mr. Rivera's habeas petition, granted Mr. Rivera a certificate of probable cause ("CPC") and remanded the case to the habeas court "to conduct a hearing on the Petitioner's motions to dismiss his counsel, proceed pro se, dismiss his habeas petition, and waive future appeals." (Doc. 38, Ex. 150.) After medical evaluations, Mr. Rivera moved to withdraw his motion to waive habeas corpus appeals and proceed pro se (Doc. 38, Ex. 161), which the habeas court granted (Id., Ex. 165).

then scheduled Mr. Rivera's hearing for May 24-26, 2010. (Doc. 31, Ex. 64 at 26.)

Unfortunately, Dr. Lisak was unavailable in May; he was only available to testify July 6-8, 2010, July 12-14, 2010, and/or August 2-6, 2010. (Doc. 31, Ex. 70 at 21.) Upon being made aware of Dr. Lisak's unavailability and "[t]o avoid delay," the habeas court reopened discovery until April 30, 2010, to allow Dr. Lisak to be deposed. (Doc. 31, Ex. 64 at 30.) On March 30, 2010, Mr. Rivera moved to either reschedule the evidentiary hearing or to allow an additional day of testimony, specifically for Dr. Lisak, after the primary evidentiary hearing. (Id. at 32.) In that motion, Mr. Rivera represented that Dr. Lisak was unavailable for depositions in April. (Id. at 33.) Respondent objected to Mr. Rivera's motion. (Id. at 37-38.) On April 16, 2010, the habeas court denied Mr. Rivera's request, choosing to "adhere to the previously scheduled evidentiary hearing, which was agreed upon by both the Petitioner and the Respondent." (Id. at 49.) Mr. Rivera filed a Request for a Certificate of Immediate Review of the April 16, 2010 Order (id. at 1), and thereafter a notice of appeal with the Georgia Supreme Court, seeking immediate review of whether the habeas court erred in denying his March 30, 2010 motion (Doc. 31, Ex. 68). The Georgia Supreme Court granted Respondent's motion to dismiss Mr. Rivera's appeal and denied Mr. Rivera's motion for reconsideration. (Doc. 31, Ex. 74; Doc. 37, Ex. 123.)

*i.*   *Evidence Related to Mr. Rivera's Past Sexual Abuse Presented at the Habeas Court's Evidentiary Hearing*

In support of his claim that defense counsel failed to investigate and uncover evidence of childhood sexual abuse, Mr. Rivera presented the testimony of two victims of sexual abuse, who opined about how the abuse affected them. According to Mr. Rivera, he offered these witnesses "to establish the likelihood that Mr. Rivera was sexually abused by Father Francisco Schulte, a priest at Colegio San Antonio Abad, a Catholic school Mr. Rivera attended from approximately 1977 to 1980." (Doc. 56 at 10.) According to Mr. Rivera, Father Schulte taught at the school from 1977 to 1981, and "Mr. Rivera was 14 to at least 16 years old when he was exposed to Father Schulte, the precise age that Father Schulte's victims typically were at the time he abused them."[3] (Id. at n.9)

The first witness was Patrick Marker, who operates a website called "behindthepinecurtain.com" that provides information about sexual abuse committed by monks at St. John's University and Abbey in Minnesota. (Doc. 31, Ex. 78 at 81-82.) Mr. Marker testified

---

[3]   To support this assertion, Mr. Rivera includes the Declaration of Jeff Anderson, an attorney who represents victims of childhood sexual abuse. (Doc. 56, Ex. A.) Mr. Anderson represents that many of the cases his firm handles involve victims assaulted by priests at St. John's Abbey, which controlled Colegio in Puerto Rico. (Id. ¶¶ 1-2.) Through discovery in his various cases, Mr. Anderson learned that Father Schulte, who worked at Colegio, was one of the priests allegedly abusing students. (Id. ¶ 3.) Indeed, the St. John's Abbey recently identified Father Schulte as one of eighteen monks who likely offended against minors. (Id. ¶ 5.) According to Mr. Anderson, he believes that Father Schulte taught at Colegio between 1977 and 1981 and typically abused boys between the ages of 13 and 16. (Id. ¶ 6.) Mr. Anderson also learned that St. John's Abbey maintains "incident" files on allegations of sexual abuse, which he believes are kept either at the St. John's Abbey headquarters in Collegeville, Minnesota or at the offices of its attorneys in Chicago, Illinois. (Id. ¶ 4.) It is these documents Mr. Rivera seeks to subpoena to determine whether an incident report was created regarding his own alleged abuse.

(1) regarding his knowledge of Father Schulte's victims in Puerto Rico (id. at 89-92); (2) about his own abuse (id. at 93-95); and (3) that he would have been willing to speak with defense counsel had he been contacted (id. at 96-97). Mr. Rivera additionally presented the affidavit of Carlos Schetinni. (Doc. 32, Ex. 83A at 107.) Like Mr. Rivera, Mr. Schetinni attended Colegio San Antonio Abad in Puerto Rico. (Id.) In his affidavit, Mr. Schetinni described the sexual abuse he suffered at the hands of Father Schulte, as well as abuse of a classmate named Tito Cassanova. (Id. at 109-10.) Mr. Schetinni additionally recounted conversations with other classmates regarding abuse by other members of the clergy at that school. (Id. at 110.) Mr. Schetinni described the impact the abuse had on him, ranging from drug addiction to anger issues and impulse control. (Id. at 112.) Like Mr. Marker, he stated that had he been asked, he would have spoken to Mr. Rivera's defense counsel or any doctor evaluating him and would have been willing to testify. (Id. at 113.)

Dr. Lisak's psychological report dated December 3, 2009 and a transcript of his deposition taken January 29, 2010 were also admitted into evidence by the state habeas court.[4] (Doc. 31, Ex.

---

[4] According to Mr. Rivera, on the discovery deadline in the state habeas proceeding he served Respondent with a report by Dr. Lisak. (Doc. 37, Ex. 130 at 151.) On that same day, he provided Respondent with Dr. Lisak's contact information. (Id.) Thereafter, Dr. Lisak was deposed by Respondent. (Id.) However, "[b]ecause Petitioner anticipated that Dr. Lisak would be a critical fact and expert witness at a later evidentiary hearing, [habeas] counsel did not elicit expansive testimony on cross-examination of Dr. Lisak at the deposition." (Id.) As described in greater detail above, Dr. Lisak was not available for an evidentiary hearing and was similarly not available to be deposed during the expanded discovery period. Mr. Rivera contends that

9

80A at 7-9, 22-90.)   In his deposition, Dr. Lisak explained his qualifications and experience (id. at 27-30); his initial impression and evaluation of Mr. Rivera (id. at 33-35); the process by which he investigates sexual abuse (Id. at 35-36); Mr. Rivera's sexual history (id. at 36-37); his belief that Mr. Rivera was abused sexually as a child and had blocked those memories (id. at 39-40, 54-58); his opinion that defense counsel should have investigated the possibility of Mr. Rivera's abuse (id. at 43-44); his statement to defense counsel that, if they were not going to investigate the sexual abuse, then they would not need him "to go in there and tell the jury about 200 rapes that this guy committed" (id. at 46); and his meeting with Mr. Rivera post-trial (id. at 62-63).   In relation to the records of sexual abuse at the Puerto Rico school, Dr. Lisak stated that the records were not "present back in 2001 . . . ."   (Id. at 74.)

his counsel suggested a conference call with the habeas court and opposing counsel to discuss solutions to Dr. Lisak's unavailability, but that "the habeas court judge was unalterably opposed to conducting a conference call." (Id. at 152.)   During the evidentiary hearing, Mr. Rivera renewed his motion to allow the live testimony of Dr. Lisak, which was denied.   (Doc. 31, Ex. 79 at 222.)   At the hearing, the habeas court openly questioned why Dr. Lisak did not file an affidavit during the re-opened discovery period.   (Id. at 213-14.)   While acknowledging the habeas court's frustration, habeas counsel was unable to provide any explanation other than that they "were counting on having him in court."   (Id. at 214-15.)   In his post-hearing brief, Mr. Rivera attached a 17-page affidavit of Dr. Lisak, which he emphasizes "is not a substitute for Dr. Lisak's live testimony."   (Doc. 37, Ex. 30 at 155.) However, the habeas court granted Respondent's motion to exclude the affidavit as untimely.   (Doc. 37, Ex. 134.)   The Georgia Supreme Court, in denying Mr. Rivera a CPC, refused to consider the affidavit as it was not part of the record.   (Doc. 38, Ex. 171.)

## ii. *State Habeas Court's Decision Regarding Past Sexual Abuse and Dr. Lisak*

The state habeas court entered its order denying Mr. Rivera's petition on March 31, 2011. (Doc. 37, Ex. 138.) The habeas court dedicated 7 pages of its 86 page order to Dr. Lisak, wherein it summarized his reports and opinions. (Id. at 35-41.) Ultimately, however, the habeas court found that defense counsel "made a reasonable, strategic decision to not further utilize Dr. Lisak as he remained focused on sexual predators being the product of sexual abuse in childhood, while Petitioner was adamant that he had not been abused as a child and there was no other evidence to support such a theory." (Id. at 39.) As to the allegations of sexual abuse, the habeas court found that defense counsel "did investigate this theory, but came up with very little concrete evidence to present a sound defense" and "what sexual abuse may have been evidenced, specifically Petitioner's activities in the porn theaters, was presented at trial." (Id. at 40.) Moreover, "Dr. Lisak's habeas testimony was based on a 'likelihood' that Petitioner was sexually abused as a young child[,]" and so the habeas court found that the doctor's opinion was "no different than that which he provided to trial counsel at the time of Petitioner's trial, an unconfirmed notion that Petitioner was abused." (Id.) The habeas court further found the testimony of Mr. Marker and Mr. Schetinni irrelevant, as neither witness could present any evidence

that the abuse they suffered was also suffered by Mr. Rivera. (Id.)

After citing case law from the Eleventh Circuit for the proposition that an attorney is not ineffective by failing to develop evidence of abuse that the client does not mention (id. at 40-41), the state habeas court went on to find that

> trial counsel cannot be ineffective in this case for not uncovering concrete evidence of sexual abuse.
>
> Petitioner failed to prove that trial counsel were ineffective by not calling Dr. Lisak to testify. Moreover, to the extent that Dr. Lisak and present habeas counsel allege that Dr. Lisak's opinions were limited based on the information he was provided by trial counsel, habeas counsel after their investigation provided no new concrete evidence of abuse. Armed again with nothing more than speculation, Petitioner failed to prove how trial counsel were deficient in investigating this angle when habeas counsel, years later with greater resources, were still unable to uncover anything more than trial counsel discovered. Moreover, Petitioner failed to prove prejudice as he has not provided any evidence to suggest a reasonable likelihood that the outcome would have been different with the "new" evidence he presented in habeas, as there is not any new evidence of abuse.

(Id. at 40.)

### iii. *Georgia Supreme Court Review for a Certificate of Probable Cause ("CPC")*

Following the denial of his petition, Mr. Rivera applied for a CPC to appeal the denial of habeas corpus in the Georgia Supreme Court. (Doc. 37, Ex. 143.) As noted in footnote 2, the Georgia Supreme Court granted Mr. Rivera a CPC to address his desire to withdraw his appeal and proceed pro se. (Doc. 38, Ex. 150.) The state habeas court, pursuant to that CPC, conducted additional

hearings and allowed further medical examinations. (See id., Exs. 152-64.) Thereafter, the habeas court entered a supplemental final order with factual findings as to Mr. Rivera's competency. (Doc. 38, Ex. 165.) In the order, the state habeas court held that Mr. Rivera was competent to proceed with his appeal to the Georgia Supreme Court and further granted Mr. Rivera's motion to withdraw his previously-filed motion to waive habeas corpus appeals and proceed pro se. (Id.)

Following the habeas court's supplemental final order, Mr. Rivera again sought a CPC to appeal the denial of his petition. Mr. Rivera alleged, *inter alia*, that the state habeas court erred by (1) finding defense counsel conducted a thorough investigation into Mr. Rivera's background and (2) refusing to allow live testimony from Dr. Lisak. (Doc. 38, Ex. 167.) In a unanimous decision, the Georgia Supreme Court denied Mr. Rivera's request for a CPC. (Id., Ex. 171.) Although the Court found that the state habeas court applied the incorrect standards to Mr. Rivera's claim under Napue v. Illinois, 360 U.S. 264 (1959) — which is not pertinent to the present motions — an independent review revealed that, even under the correct standard, Mr. Rivera failed to establish the requisite prejudice to assert a Napue claim and excuse procedural default. (Id.) The Georgia Supreme Court then concluded that "upon consideration of the entirety of the Application for Certificate of Probable Cause to appeal the denial of habeas corpus, it is hereby denied." (Id.)

## C.   Mr. Rivera's § 2254 Petition

Mr. Rivera filed the instant § 2254 petition on September 9, 2013.  (Doc. 1.)   The next day, Respondent moved to dismiss the petition as untimely (doc. 6), which the Court denied on July 16, 2014 (doc. 25).   The Court entered its Scheduling Order on September 19, 2014.   (Doc. 40.)   Mr. Rivera filed the instant motions for discovery and evidentiary hearing on February 2, 2015. Having been fully briefed, these motions are now ripe for the Court's review.

**[ORDER CONTINUES ON NEXT PAGE]**

## II.  **Mr. Rivera's Motion for Discovery**[5]

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Even so, a court may, in its discretion, authorize a party to conduct discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases

---

[5]    The parties present considerable argument regarding the scope of discovery in light of 28 U.S.C. § 2254(d).  In that section, federal courts are instructed that

> [a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).  Moreover, the Supreme Court held in Cullen v. Pinholster that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. 1388, 1398 (2011).  Analyzing Pinholster's reach, the Eleventh Circuit recently held that although the Pinholster holding only specifically covers § 2254(d)(1), "its logic applies even more clearly to § 2254(d)(2) . . . ." Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015).  As Respondent frames its argument, "because Petitioner's claims were adjudicated on the merits in state court, this Court's review is limited solely to the evidence found in the state court record." (Doc. 59 at 15.)  Therefore, Mr. Rivera "should not be allowed discovery of information that could not be considered when this Court performs its 28 U.S.C. § 2254(d) review of the state court's denial of his claims." (Id.)  Mr. Rivera responds that he challenges the fact-finding process as unreasonable: "[Mr.] Rivera has argued in both his discovery and his evidentiary hearing motions that the state court's refusal to permit Dr. Lisak to testify and the court's refusal to consider Dr. Lisak's sworn affidavit was unreasonable and satisfies the requirements of both § 2254(d) and (e)(2)." (Doc. 65 at 14.)  Thus, Mr. Rivera contends that he should be permitted to present evidence in order to demonstrate the state proceeding's deficiencies.

"In addressing the evidence that a federal habeas court may consider, Pinholster did not, strictly speaking, alter or even speak to the standards governing discovery set forth in Rule 6 . . . . That is reason enough to refrain from invoking Pinholster's restrictions at the discovery phase." Conway v. Houk, No. 2:07-cv-947, 2011 WL 2119373, at *3 (S.D. Ohio May 26, 2011).  Moreover, the Court finds that, irrespective of Pinholster, Rivera cannot support his discovery request with good cause, and for that reason alone it is due to be denied.

15

(hereinafter "Rule 6"). 28 U.S.C. Section 2254 Rule 6; Bracy, 520 U.S. at 904. Rule 6 provides:

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. . . . A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

A petitioner sets forth good cause "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969) (ellipses in original)). A petitioner "need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition." Payne v. Bell, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000).

Equally important to the Court's consideration of Mr. Rivera's motion is what *cannot* qualify as good cause: "Good cause for discovery cannot arise from mere speculation or pure hypothesis." Lee v. Humphrey, No. 5:10-cv-017, 2013 WL 4482461, at *2 (S.D. Ga. Aug. 20, 2013) (quoting Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006) (per curiam), modifying Arthur v. Allen, 452 F.3d 1234, 1247-48). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an

16

evidentiary hearing.'" Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (quoting Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991)). Indeed, "a petitioner may not embark on a fishing expedition in order to develop claims for which there is no factual basis." Hill v. Anderson, No. 4:98-cv-0795, 2010 WL 5178699, at *8 (N.D. Ohio Dec. 14, 2010); Borden v. Allen, 646 F.3d 785, 810 n.31 (11th Cir. 2011) ("Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.").

As the Supreme Court instructed in Bracy, "[b]efore addressing whether petitioner is entitled to discovery under [Rule 6], [the Court] must first identify the 'essential elements' of that claim." Bracy, 520 U.S. at 904 (addressing the elements of a judicial-bias claim). Here, Mr. Rivera seeks leave to subpoena the incident files and any other documentation within the possession of St. John's Abbey that reflect allegations of sexual abuse and any subsequent investigation thereof. Mr. Rivera's intended use for this evidence is to support his claim that trial counsel was ineffective[6] in failing to investigate whether he was sexually abused as a child.[7]

---

[6] To prevail on a claim for ineffective assistance of counsel, "a petitioner must show both deficient performance and prejudice." Conner v. GDCP Warden, No. 13-13928, 2015 WL 1651885, at *11 (11th Cir. Apr. 15, 2015) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To prove deficient performance, a petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). "To establish prejudice, a petitioner must

17

In light of these standards, the Supreme Court and Eleventh Circuit have clearly held that "[i]n reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) (quoting Strickland, 466 U.S. at 689). Accordingly, the Court focuses its attention on the information Mr. Johnson and Mr. Hawk had before them at the time their decisions were made (roughly 2001 to 2004). On the one hand, defense counsel had Mr. Rivera's own statement to both them and Dr. Lisak that no sexual abuse ever occurred. On the other hand, defense counsel had the opinion of Dr. Lisak that Mr. Rivera's behavior was consistent with someone who suffered childhood sexual abuse, that if such abuse did occur it was likely to have occurred at the private, religious school he attended as a child, and that defense counsel should conduct a

demonstrate a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). As it relates to a petitioner challenging a death sentence, "a petitioner establishes prejudice by showing that 'there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" Id. (quoting Strickland, 466 U.S. at 695) (ellipses in original).

[7] As the Court understands Mr. Rivera's briefs, one use for this evidence is to support his claim that the "state court fact-finding process was unreasonable and inadequate because the court unjustifiably refused to consider important evidence that contradicts the state habeas court's ultimate findings." (Doc. 65 at 7.) As will be discussed in greater detail below, Mr. Rivera repeatedly acknowledges that the requested incident files were not available, or even known to exist, until after the state habeas proceeding. Accordingly, the Court finds that this particular use of the evidence is not supported by good cause.

background investigation because it is not uncommon for victims of childhood sexual abuse to block such memories. (Doc. 31, Ex. 78 at 142; Doc. 31, Ex. 80A at 54-58.)

In support of his ineffective assistance claim, Mr. Rivera now seeks discovery of incident files and any other documentation of sexual abuse from St. John's Abbey, purportedly to determine if Mr. Rivera's name appears in any of the files as a victim of abuse. Yet, Mr. Rivera's brief does not explain how these particular documents are relevant to his claim for ineffective assistance. Recognizing the severity of Mr. Rivera's sentence, the Court endeavors to expand on the minimal argument provided in brief to uncover a basis for his request. In so doing, the Court must first note that the record clearly shows that these incident files were not available at the time of Mr. Rivera's trial or even at his state habeas proceeding, a fact which Mr. Rivera and Dr. Lisak repeatedly acknowledge.[8] Therefore, to the extent Mr. Rivera seeks

---

[8]     Doc. 56 at 10 ("Unfortunately, at the time of the state habeas proceedings, it was virtually impossible to obtain information directly from the Catholic Church and its affiliates regarding allegations of sexual abuse by its clerical members. Recently, the stone wall the Church erected against such inquiries has begun to crumble, and new information has come to light regarding allegations of abuse brought against the Catholic Church school that Mr. Rivera attended."); id. at 14-15 ("[T]he existence of this evidence, in the hands of third parties, was not known and was not discoverable" at the time of Mr. Rivera's habeas proceeding."); id. at 16 ("Since the state habeas hearings, new information has become available regarding sexual abuse of students at Mr. Rivera's school during the period in which he attended it."); id. at 17 ("[C]ounsel involved in several lawsuits against St. John's Abbey, on the basis of the predatory sexual conduct of Father Schulte and others, only recently learned that the Abbey has 'incident' files on sexual abuse allegations against its clergy, including Father Schulte."); Doc. 56, Ex. A ("In the course of a deposition taken, we learned that the Abbey maintains 'incident' files on sexual abuse allegations. This was the first I ever heard of such documents."); Doc. 31, Ex. 80A at 74 (testimony of Dr. Lisak that these records were not "present back in 2001").

these documents to show that they existed at his trial and that his counsel acted unreasonably by not discovering them, such a request must fail.

Because Mr. Rivera does not dispute that these documents were unavailable, the Court proceeds under the assumption that he intends to use them to show that if defense counsel heeded Dr. Lisak's recommendation and conducted an investigation into Mr. Rivera's background, then counsel may have uncovered some *other* evidence of the abuse. In other words, if the Court permitted Mr. Rivera discovery on these documents, and the documents revealed that Mr. Rivera was a victim of abuse, the proof of such abuse would bolster his claim that defense counsel should have conducted an investigation into Mr. Rivera's time at Colegio. Importantly, however, the potential benefit of hindsight and late discovered evidence that Mr. Rivera was abused does not change the information available to defense counsel at the time of Mr. Rivera's trial. See White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.") Thus, even if Mr. Rivera now uncovered evidence through his own memory or otherwise that he was abused at Colegio, that evidence would not alter the reasonableness of defense counsels' choices *at trial*. And while Mr. Rivera has demonstrated how these records could be probative of whether he was a victim of abuse, he has missed the critical final step. On a motion for discovery, the

Court must inquire into whether "the evidence sought would lead to relevant evidence *regarding his petition."* Payne, 89 F. Supp. 2d at 970 (emphasis added). Therefore, Mr. Rivera must demonstrate that the evidence would be probative of his claim for ineffective assistance, not just that he may have suffered the abuse. This he has not done.

Moreover, even if the records were available or in some way relevant to his ineffective assistance claim, Mr. Rivera is not entitled to discovery to engage in a fishing expedition. It cannot be overstated that Mr. Rivera "adamantly denied that any abuse occurred" at Colegio. (Doc. 31, Ex. 78 at 142.) Even so, Mr. Rivera seeks the St. John's Abbey records to determine if his name appears in any investigation of sexual abuse. On these limited arguments, the Court cannot conclude that the request is based on anything other than speculation and hypothesis. Breaking down Mr. Rivera's request as the Court understands it, he seeks the discovery because (1) Dr. Lisak opined that Mr. Rivera's behavior was consistent with someone who had been sexually abused and victims of sexual abuse often block memories of the abuse; (2) Father Schulte allegedly sexually abused boys roughly Mr. Rivera's age while Mr. Rivera attended Colegio; and (3) Mr. Rivera might find documentation of his alleged abuse in the incident files. However, that these reports exist does nothing to support the proposition that Mr. Rivera's name might be found within them. To allow Mr. Rivera to subpoena the St. John's Abbey incident reports

to search for his name based on such attenuated assertions — when Mr. Rivera has adamantly maintained he was not abused — would expand the discovery doctrine well beyond its intended scope. See Borden v. Allen, 646 F.3d 785, 810 n.31 (11th Cir. 2011) ("Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim."); Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009) (finding that the district court did not err in denying discovery where the petitioner "offered no more than speculation that additional information may exist" (internal alterations and quotations omitted)); Calderon v. U.S. Dist. Court for the N. Dist. of Cal., 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.").

Based on the foregoing, the Court concludes that Mr. Rivera has not presented good cause to allow the requested discovery, and his motion is **DENIED**.

### III. **Mr. Rivera's Motion for an Evidentiary Hearing**

Mr. Rivera additionally requests an evidentiary hearing to present the testimony of Dr. Lisak. As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf

of a state prisoner." Pinholster, 131 S. Ct. at 1398. As is relevant to the present motion for an evidentiary hearing, federal courts may only grant habeas relief to a state prisoner whose claims were adjudicated on the merits in the state court if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In light of this highly deferential standard, the Supreme Court addressed the permissible scope of evidence where there has been an adjudication on the merits and held that federal courts are "limited to the record that was before the state court that adjudicated the claim on the merits," and therefore "evidence introduced in federal court has no bearing on § 2254(d)(1) review." Pinholster, 131 S. Ct. at 1398. As the Eleventh Circuit explained just this year, the district court may not exercise its discretion to grant an evidentiary hearing until after the petitioner has demonstrated an error or unreasonable determination as contemplated by § 2254(d). Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015). And while the Supreme Court's rule in Pinholster only expressly applied to § 2254(d)(1), the Eleventh Circuit Court of Appeals held that the logic applies equally to § 2254(d)(2), which expressly indicates that the federal court review the state court

ruling "in light of the evidence presented in the State court proceeding." Id. (quoting 28 U.S.C. § 2254(d)(2)).

Here, Mr. Rivera argues that "the state court adjudicatory process was fundamentally flawed by the habeas court's preclusion of highly relevant testimony from a critical fact and expert witness. As a result of this defect in the factfinding process, Mr. Rivera has established that the state court's determination of facts was unreasonable." (Doc. 57 at 21.) Thus, Mr. Rivera attempts to use this extra-record evidence to prove that the state court acted unreasonably.

Based on Pinholster, the Court finds ruling on this issue to be premature. Indeed, the Eleventh Circuit has recognized that consideration of a request for an evidentiary hearing and ruling on the merits of a petition are "intertwined determinations" that "usually go hand-in-hand." Landers, 776 F.3d at 1294-95. Mr. Rivera must, in order to obtain the habeas relief he requests, prove that the state court's adjudication was flawed — either based on an unreasonable application of law or determination of fact. Only after he passes this hurdle — on the evidence contained in the record — may a district court use its discretion to grant an evidentiary hearing or afford him the relief sought. Mr. Rivera appears to recognize that this is the appropriate result. He cites Smith v. Cain, a case out of the Fifth Circuit Court of Appeals, for the proposition that

<u>Pinholster</u>'s limitation on federal evidentiary hearings does not apply *once the district court concluded, solely on the basis of the state court record, that the state trial court unreasonably applied federal law.* Because the state court decision is no longer entitled to deference, the federal court is free to properly address the claim and grant appropriate relief.

708 F.3d 628, 635 (5th Cir. 2013) (internal quotations omitted) (emphasis added).

On these particular facts and because briefing on the merits has yet to take place, the Court denies Mr. Rivera's motion for an evidentiary hearing at this time. When arguing the merits of his claims, Mr. Rivera may renew his motion for evidentiary hearing and, if he is able to satisfy the requirements of § 2254(d), the Court will consider a request to present the testimony of Dr. Lisak at that time.[9]

## IV. **Conclusion**

Accordingly, the Court hereby **DENIES** Mr. Rivera's Motion for Discovery and Motion for an Evidentiary Hearing. (Docs. 56 & 57.)

---

[9]    Mr. Rivera also requests that the Court defer its consideration of these motions pending the Supreme Court's decision in <u>Brumfield v. Cain</u>, 744 F.3d 918 (5th Cir. 2014), <u>cert. granted</u> 135 S. Ct. 752 (Dec. 5, 2014).    In that case, the district court found that the petitioner cleared the § 2254(d) hurdle and conducted an evidentiary hearing.    The Fifth Circuit reversed, concluding that an evidentiary hearing was unnecessary because the state court's determination should have been afforded AEDPA deference.    The Supreme Court granted certiorari to decide, *inter alia*, "[w]hether a state court that considers the evidence presented at a petitioner's penalty phase proceeding as determinative of the petitioner's claim of mental retardation under <u>Atkins v. Virginia</u> . . . has based its decision on an unreasonable determination of facts[.]"

As has been discussed above, the Court finds that the motion for an evidentiary hearing is premature and should be asserted, if necessary and appropriate, when addressing the merits of Mr. Rivera's claims.    For the same reason, the Court denies Mr. Rivera's request to reserve ruling.

25

Following briefing on the merits of Mr. Rivera's claim, Mr. Rivera may renew his Motion for an Evidentiary Hearing, if appropriate.

**ORDER ENTERED** at Augusta, Georgia, this  10th  day of June, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA