IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

REINALDO JAVIER RIVERA,

 Petitioner,

  v.

CARL HUMPHREY, Warden, Georgia
Diagnostic and Classification
State Prison,

 Respondent.

CV 113-161

## O R D E R

Presently before the Court are (1) Petitioner's first amended petition (doc. 41); (2) Petitioner's second motion to amend (doc. 71-1); and (3) Petitioner's motion to appoint supplemental counsel (doc. 78). The Court **DENIES** three of the four new claims raised in Petitioner's first and second amended petitions. It also **DENIES** Petitioner's motion to appoint supplemental counsel.

### I. Procedural Background

Petitioner filed his original petition on September 9, 2013. (Doc. 1.) It asserted six claims: (1) Petitioner's counsel at trial and on appeal was ineffective (id. at 5); (2) The prosecution committed misconduct that deprived Petitioner of a fair trial (id. at 17); (3) Jurors engaged in misconduct (id. at 23); (4) The trial court made errors and improper rulings

which deprived Petitioner of a fair trial (id. at 25); (5) The trial court gave improper jury instructions at both the guilt and sentencing stage (id. at 31); and (6) Georgia imposes the death penalty arbitrarily and capriciously (id. at 33). On September 19, 2014, this Court entered a scheduling order granting Petitioner thirty days "to file any Amendments to the Petition for Habeas Corpus." (Doc. 40 at 1.) Petitioner timely filed his first amended petition on October 20, 2014. (Doc. 41.) His first amended petition asserted two additional claims: (1) Petitioner's trial contained so many procedural and substantive errors that, cumulatively, they violated his right to a fair trial (id. at 33); and (2) Execution by lethal injection violates the Constitution (id. at 41). Then, on August 9, 2016, Petitioner filed his second amended petition. (Doc. 71-1.) This petition added two final claims: (1) Petitioner is actually innocent of Marina Glista's murder (id. 71-1 at 18) and (2) Petitioner's trial counsel was ineffective for reasons not enumerated in the original petition (id. at ¶ 15a).

After filing his second amended petition, Petitioner also filed a motion for supplemental counsel. (Doc. 78.) In the motion, Petitioner requests supplemental counsel to investigate the effectiveness of his state habeas counsel. Petitioner claims his state habeas counsel failed to properly investigate and pursue the ineffective assistance of trial counsel claim which

he now raises in his second motion to amend. He requests supplemental counsel because his state habeas and current federal habeas counsel are the same and thus unable to properly investigate their own effectiveness. If his state habeas counsel was ineffective, Petitioner believes that it would excuse the procedural default which currently bars the Court from considering the new ineffective assistance of trial counsel claim he raises in his second amended petition.

## II. First and Second Amended Petitions

The Court reviews both Petitioner's first and second amended Petitions.[1] In these petitions, Petitioner asserts four claims he did not assert in his original petition: (1) Cumulative errors violated his right to a fair trial (doc. 41 at 33); (2) Execution by lethal injection violates the Constitution (id. at 41); (3) Petitioner is actually innocent of the assault and murder of Marni Glista (doc. 71-1 at 18); and (4) Trial counsel provided ineffective assistance for reasons not listed in his original petition (doc. 71 at 2).

---

[1] Petitioner filed his first amended petition in response to a scheduling order the Court issued on September 19, 2014. (Doc. 40.) The order stated that "Petitioner shall have **THIRTY** days . . . to file any Amendments to the Petition for Habeas Corpus." (Id. (emphasis in original).) The Court, however, does not interpret its language to give Petitioner permission to file time-barred amendments. Thus, it still reviews Petitioner's first amended petition to ensure that its new claims are allowed under the AEDPA's statute of limitations. See Day v. McDonough, 547 U.S. 198, 209 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition.").

The Court denies Petitioner's lethal injection claim because it violates the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations and, even if it didn't, it is not a cognizable claim in habeas proceedings. It denies Petitioner's actual-innocence claim because an actual-innocence claim is not cognizable under the United States Constitution. And it denies Petitioner's new ineffective assistance of trial counsel claims because they are procedurally defaulted. It does not, however, deny Petitioner's cumulative-error claim.

## 1. Lethal-Injection Claim

### a. AEDPA Statute of Limitations

Petitioner raises the lethal-injection claim in both his first and second amended petitions. The Court, however, denies Petitioner's request to add his lethal-injection claim because it is barred by the AEDPA statute of limitations. Under the AEDPA, state prisoners requesting habeas corpus relief must file their petition for relief within one year of (1) the final state ruling; (2) the date on which any impediment to filing an action was removed if the impediment was created by the State; (3) the date on which the constitutional right asserted was recognized or retroactively applied by the Supreme Court; or (4) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A)-(D). Additionally, any

claims added after the original petition must also be filed within the statute of limitations. If they are not, they must either relate back under Federal Rule of Civil Procedure 15 or be subject to some other exception.

Petitioner has two applicable deadlines. The first deadline relates to Petitioner's final state-court ruling. The state-court ruling deadline was January 27, 2014. (See Doc. 86 at 7.) Petitioner filed his initial petition on September 9, 2013. (Doc. 1.) He filed his first and second amended petitions on October 20, 2014, and August 9, 2016, respectively. (Docs. 41 & 71.) Thus, although Petitioner's initial petition was timely, his first and second amended petitions violated the state-court filing deadline.

The second deadline relates to the date on which the factual predicate for Petitioner's constitutional claim could be discovered. The latest factual predicate Petitioner relies on is a law signed by Governor Deal on July 1, 2013. (Doc. 71-1 at 44.) Petitioner, however, did not file his first amended petition until well over a year later — on October 20, 2014. Thus, Petitioner's first and second amended petitions violated the factual-predicate deadline as well, and his lethal-injection claim is untimely under the AEDPA.

Because the new claims presented in Petitioner's first and second amended petitions violate the statute of limitations, the Court will not hear them absent an exception. See Day v.

Crosby, 391 F.3d 1192, 1194 (11th Cir. 2004) (holding that a district court may sua sponte dismiss claims barred by the AEDPA statute of limitations because "[a] federal court that sits in collateral review of a criminal judgment of a state court has an obligation to enforce the federal state of limitations"). The Court now determines whether such an exception exists.

The only exception applicable to Petitioner's claims is the "relation back" provision of Federal Rule of Civil Procedure 15. Rule 15(c) states that amended petitions are timely filed for purposes of the statute of limitations if they "relate back" to the original petition. See Mayle v. Felix, 545 U.S. 644, 655 (2005)(applying Rule 15 to federal habeas proceedings). A petition "relates back to the date of the original [petition] when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original [petition]." Fed. R. Civ. P. 15(c)(1)(B).

The purpose of Rule 15(c) is to "prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Advisory Committee's Note on 1991 Amendment to Federal Rule of Civil Procedure 15. Rule 15 is not intended, however, "to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." Dean v. United States, 278 F.3d 1218, 1221 (11th Cir. 2002). It

6

allows parties to "correct technical deficiencies or expand facts alleged in the original pleading." Id. "[I]t does not permit an entirely different transaction to be alleged by amendment." Id.

In deciding whether a claim relates back, the key words the Court must consider are "conduct, transaction, and occurrence." Mayle, 545 U.S. at 656. An amended petition arises out of the same "conduct, transaction, and occurrence" when "the original and amended petitions state claims that are tied to a common core of operative facts." Id. at 664. Thus, "in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)(citations omitted).

Petitioner's new claim does not relate back to his original petition, because his original petition did not challenge Georgia's death-penalty procedure. Thus, Petitioner has no hook on which to claim the relation back exception, and this claim is barred by the statute of limitations.

### b. Non-Cognizable Claim

The Court also denies Petitioner's lethal-injection claim because it is not cognizable in a habeas proceeding. Habeas cases govern the constitutionality of a prisoner's conviction or sentence. McNabb v. Comm'r Ala. Dept. of Corr., 727 F.3d 1334,

1344 (11th Cir. 2013). They do not govern the circumstances of confinement or imposition of punishment. Id. Because execution procedures go to the conditions of confinement, and not the constitutionality of the conviction, "[a] § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." Id.; see also Tompkins v. Sec'y, Dep't. of Corr., 557 F.3d 1257, 1261 (11th Cir. 2009). Petitioner's claim challenges the lethal-injection procedure, not the constitutionality of his conviction. Thus, it is not a cognizable habeas claim.

## 2. **Petitioner's Actual-Innocence Claim**

In his second amended petition, Petitioner asserts that he "is actually innocent of the assault and murder of Marni Glista." (Doc. 71-1 at 2.) Petitioner argues that "trial counsel ignored significantly exculpatory evidence" and "[h]ad such evidence been presented at [his] trial, no rational juror would have voted to convict [him] . . . ." (Id. at 21-22.) Petitioner then asserts, in a footnote at the end of his motion to amend, that "[a freestanding claim of actual innocence] is cognizable in habeas proceedings." (Doc. 71 at 10 n.3.)

But the Supreme Court has never recognized a freestanding actual innocence claim. Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in

8

the underlying state criminal proceeding."). Neither has the Eleventh Circuit. See Mendoza v. Sec'y. Fla. Dep't of Corr., 659 F. App'x. 974, 981 (11th Cir. 2016)("[I]t remains an open question whether a freestanding actual innocence claim is even cognizable in a capital habeas case."). The Court therefore will not allow this claim to go forward.

Additionally, this Court finds no basis in the Constitution for an actual innocence claim in federal habeas proceedings. "Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution — not to correct errors of fact." Herrera, 506 U.S. at 400. The state trial is the main event in criminal proceedings, and the "federal courts are not forums in which to relitigate [it]." Id. at 401. Indeed, "few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." Id. Thus, the Court agrees with the late Justice Scalia that "[t]here is no basis in text, tradition, or even in contemporary practice (if that were enough) for finding in the Constitution a right to demand judicial consideration of newly discovered evidence of innocence brought forward after conviction," id. at 427-28 (Scalia, J., concurring), and it dismisses Petitioner's freestanding actual innocence claim because it "is not a ground for relief on federal habeas corpus." Townsend v. Sain, 372 U.S. 293, 317 (1963).

### 3. Ineffective Assistance of Counsel

Petitioner's new ineffective assistance of counsel claim fails because it is time barred by the AEDPA and because it is procedurally defaulted. The Court addresses the statute-of-limitations bar in this section. It addresses the procedural default issue in its discussion of Petitioner's motion for supplemental counsel.

Petitioner admits that his new claim was filed outside the statute of limitations. (Doc. 91 at 8.) Petitioner claims, however, that it does not violate the statute of limitations because it "relates back" to his original and first amended petition. In the alternative, he also argues that his claim is not barred by the statute of limitations because it qualifies for equitable tolling. The Court disagrees.

#### a. Rule 15

Petitioner alleges that his trial counsel "failed to . . . investigate and develop readily available exculpatory evidence . . . indicating he falsely confessed to the sexual assault murders of Marni Glista and Tiffaney Wilson," and that his trial counsel failed to properly cross examine a state witness, Philip Henschel. (Doc. 71-1 ¶ 15(b) & (u).) Petitioner asserts that these claims relate back to the claims in his original petition that his trial counsel failed "to utilize evidence in counsel's possession to marshal a meaningful and mitigating defense during Petitioner's capital trial" and that they failed to "to adequately use the investigative tools

and services to which counsel had access and . . . to present material evidence that was reasonably available to counsel during Petitioner's guilt/innocence and aggravation/mitigation trials." (Doc. 71 at 8.)

But Petitioner's new claim does not relate back to his original petition because it is not "tied to a common core of operative facts." In order for an amended petition to be "tied to a common core of operative facts," the original petition must contain "operative facts." Petitioner's original petition, however, contains no such facts related to Mr. Henschel or Petitioner's allegedly false confessions. Thus, it is impossible for his new claim to "relate back." Payne v. U.S., No. 8:05-CV-273-T-27MSS, 2007 WL 496608, *6 (M.D. Fla. Feb. 12, 2007)("Finally, it is axiomatic that where, as here, there are no facts presented in support of the original claims, there can be no 'common core of operative facts uniting the original and newly asserted claims.'" (citing Mayle, 125 S.Ct. at 2569-75)).

Additionally, allowing Petitioner to relate back to the conclusory allegations cited in his original petition would essentially obliterate the statute of limitations. See Mayle, 545 U.S. 657-59. The claims Petitioner cites from his original petition are so broad that any new factual theory could "relate back" to them. Id. at 656-57. The Supreme Court, however, has explicitly counseled against misusing Rule 15 in this way. Id. at 658-59.

11

Therefore, Petitioner may not "relate back" his new ineffective assistance of trial counsel claim to his original petition.

### b. Equitable Tolling

Equitable tolling is an additional way in which a Petitioner can bypass the congressionally mandated statute of limitations. Holland v. Florida, 560 U.S. 631, 645 (2010). A court may equitably toll the statute of limitations if the petitioner proves "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Thomas v. Att'y Gen., 795 F.3d 1286, 1291 (11th Cir. 2015). Extraordinary circumstances do not include "a garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline." See id. at 651-52 (internal citations and quotation marks omitted). Indeed, "attorney negligence, even gross negligence or recklessness, is not an extraordinary circumstance." Id.

Petitioner claims that "he is entitled to equitable tolling due to a conflict of interest that arose from the fact that the Georgia Resource Center attorneys, from state habeas proceedings until recently, failed to recognize the IATC claims he has newly raised." (Doc. 91 at 11 (emphasis added).) Specifically, he alleges that his habeas counsels' "inability to raise a competent legal challenge to their own ineffective representation constitutes an extraordinary circumstance justifying equitable tolling . . . ." (Id. at 12.) In other

words, Petitioner claims that because his federal habeas counsel was also his state habeas counsel, and because they failed to recognize at the state level the claims he now raises, his federal counsel had a conflict of interest that prevented them from raising the new claims in his initial federal habeas petition. This conflict of interest, he asserts, is the requisite "extraordinary circumstance" required for equitable tolling.

First, Petitioner's argument fails because the "extraordinary circumstance" at issue here is not divided loyalty or conflict of interest, but simple attorney negligence: Petitioner's postconviction attorneys failed to recognize claims that they now believe they could have raised. The Supreme Court, however, has made it "abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling," especially "in the postconviction context where the prisoners have no constitutional right to counsel." Holland, 560 U.S. at 655 (Alito, J., concurring). Thus, the negligence of his postconviction attorneys will not suffice to establish the extraordinary circumstance needed for equitable tolling.

Second, Petitioner's argument fails to meet the Eleventh Circuit's standard for equitable tolling of the AEDPA. In the Eleventh Circuit, "e]quitable tolling based on counsel's failure to satisfy the AEDPA's statute of limitations is available only

for serious instances of attorney misconduct." Thomas, 795 F.3d at 1291 (internal citations and quotation marks omitted). A petitioner can establish attorney misconduct only when he shows that his attorneys "through their conduct, effectively abandoned [him]." Id. Petitioner does not allege that his attorneys abandoned him. Therefore, the Court will not toll the AEDPA's statute of limitations on his new claim of ineffective assistance of trial counsel.

## 4. Cumulative-Error Claim

Petitioner also raises a new, cumulative-error claim. Petitioner challenges the cumulative-error claim on the grounds that it is procedurally defaulted. The Court has already declared, however, that it will not address procedural default until the merits briefing stage. Thus, it will not address whether Petitioner's cumulative-error claim is procedurally defaulted at this time.

Because Petitioner has challenged this claim on no other grounds, the Court must now only consider whether the new claim "relates back" to Petitioner's original claim such that it satisfies the AEDPA's statute of limitations. As this Court earlier noted, amended petitions "relate back" when the new claim arose "from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in both 'time and type.'" Davenport, 217 F.3d at 1344. Because Petitioner relies on no new facts, but merely makes an

additional legal claim — that all the previously alleged legal claims, added together, amount to a separate and distinct legal claim — the Court finds that his new claims relate back for purposes of Rule 15(c). Thus, the Court will allow Petitioner's cumulative error claim to proceed to the merits stage.

### III. Motion for Supplemental Counsel

The Court now considers Petitioner's motion for supplemental counsel. Petitioner admits that his new ineffective assistance of trial counsel claim is procedurally defaulted, and he offers two theories for escaping its bonds. First, he argues that the Supreme Court decisions in Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 133 S. Ct. 1911 (2013), require this Court to excuse his procedural default. Second, he claims that the actual-innocence gateway exception excuses his procedural default. Petitioner only asks for supplemental counsel because he claims it is necessary to establish the Martinez-Trevino exception. Thus, Petitioner's motion is actually a motion to excuse procedural default.

The Court concludes that neither the Martinez-Trevino exception nor the actual-innocence gateway exception excuse Petitioner's admitted procedural default. The Court also denies Petitioner's motion to appoint supplemental counsel because supplemental counsel is unnecessary if the Martinez-Trevino exception does not apply.

### 1. Martinez-Trevino Exception

15

Petitioner admits that his claim is procedurally defaulted. What he seeks is an exception to the doctrine of procedural default based on two recent Supreme Court cases. The exception provides that, in very limited circumstances, ineffective assistance of counsel at the state habeas level may excuse procedurally defaulted ineffective assistance of trial counsel claims. Petitioner requests supplemental counsel solely for the purposes of proving his state habeas counsel was ineffective. Under Petitioner's theory, if he can demonstrate that his state habeas counsel was ineffective, he can establish this exception and proceed with his new ineffective assistance of trial counsel claims.

At the outset, the Court notes that even if the Martinez-Trevino exception were to apply to Petitioner's procedurally defaulted ineffective assistance of trial counsel claim, Petitioner's claim would still be barred. As the Court explained earlier, Petitioner's new ineffective assistance of trial counsel claim is barred by the AEDPA statute of limitations, and it is not subject to any exceptions. The Martinez-Trevino exception, however, does not excuse a late filing under the AEDPA's statute of limitations. Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir. 2014)("[T]he Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to the AEDPA's statute of limitations or tolling of that period. . . .

16

At no point in _Martinez_ or _Trevino_ did the Supreme Court mention the 'statute of limitations,' AEDPA's limitations period, or tolling in any way."). The _Martinez-Trevino_ exception only excuses procedural default. _Id._ Because Petitioner's new claim is time barred by the AEDPA, it could not be heard by this Court even if it did meet the _Martinez-Trevino_ exception to procedural default.

But, even if Petitioner could avoid the AEDPA's statute of limitations bar, he could not establish an exception to procedural default under _Martinez-Trevino_. The doctrine of procedural default provides that "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." _Martinez_, 566 U.S. at 9. In other words, if a state prisoner attempts to bring a claim in a federal habeas petition that, for procedural reasons, he could not bring in state court, the federal court will not hear the claim. The doctrine is "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." _Id._

But "[t]he doctrine baring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." _Id._

at 10. "The rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the [Supreme] Court's discretion." Id. at 13. (citing McCleskey v. Zant, 499 U.S. 467, 490 (1991)).

For years, the Supreme Court held that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'" to excuse procedural default. See Maples v. Thomas, 565 U.S. 266, 280 (2012). Cause for procedural default exists only where "something external to the petitioner . . . impede[s] [his] efforts to comply with the State's procedural rule." Id. Attorney negligence could not be an "external" cause because attorneys, especially in the postconviction context where prisoners have no constitutional right to an attorney, act as the prisoner's agent. Id. In 2012, however, the Court changed its position.

In Martinez, the Court held that the negligence of a postconviction attorney can qualify as "cause" for procedural default under certain circumstances. Martinez, 566 U.S. at 9. A prisoner can establish cause if a postconviction attorney rendered ineffective assistance of counsel during an "initial-review collateral proceeding," that is, "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance [of trial counsel]." Id. at 8. The Court reasoned that such "initial-review collateral proceedings" are different than normal post-conviction proceedings because "when an

18

attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's [ineffective assistance of trial counsel] claim." Id. at 11. Thus, if a prisoner lacks an attorney or lacks an effective attorney during his first opportunity to raise an ineffective assistance of trial counsel claim, "as an equitable matter," the federal habeas court should excuse procedural default and hear the ineffective assistance of trial counsel claim. Id. at 14. Therefore, a petitioner may establish cause for procedural default if "a state requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding" and (a) it fails to provide counsel at the collateral proceeding or (b) the counsel provided is ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id.

In 2013, the Court once again expanded this exception. See Trevino, 133 S. Ct. at 1911. In Trevino, the Court held that it would excuse procedural default for failure to raise an ineffective assistance of trial counsel claim when a state's procedural framework, even if not explicitly banning an ineffective assistance of trial counsel claim on direct appeal, "does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." Id. at 1921. In other words, a petitioner can establish cause for failing to raise an ineffective assistance of trial counsel claim in state court even if the state did not

require that he wait until collateral appeal to raise his claim. If a prisoner could not, as a practical matter, raise his ineffective assistance of trial counsel claim on direct appeal, he was entitled to effective counsel at his first opportunity to raise his claim on collateral appeal.

In sum, the Martinez and Trevino decisions create the following narrow exception to procedural default. They hold that, as an equitable matter, prisoners have a right to challenge the effectiveness of their trial counsel. Thus, states must give prisoners a meaningful opportunity to challenge the effectiveness of their trial counsel and provide them with the aid of effective counsel at the point when a prisoner may first raise such a claim. If a state does not do these two things, federal courts will not declare a petitioner's failure to challenge the effectiveness of trial counsel in state court procedurally defaulted.

Petitioner asserts that "[s]tate habeas proceedings were the [] first opportunity [he] had to challenge the adequacy of his trial counsel's representation." (Doc. 78 at 56.) He then reasons that, because this was his first opportunity to raise this claim, he had a right to effective assistance of counsel as to this claim under Martinez and Trevino. (Id. at 56-57.) Because he had a right to effective assistance of counsel at his initial-review collateral proceeding, he argues, he should be able to argue that his state habeas counsel was ineffective for

failing to raise his new ineffective assistance of trial counsel claims. If he did suffer from ineffective assistance of state habeas counsel, he argues, he can establish cause to excuse his procedural default. (Id. at 54.)

Petitioner's claim that state habeas proceedings were his first opportunity to raise his ineffective assistance of trial counsel claims rests upon his belief that Georgia law precluded him from effectively raising his ineffective assistance claim on direct appeal. Petitioner claims that "[u]nder Georgia law, Mr. Rivera's continued representation by trial counsel [on appeal] prevented him from raising the claim that he received ineffective assistance of counsel at trial." (Doc. 78 at 56.) He contends therefore that because he was represented by trial counsel during his direct appeal, he could not challenge his trial counsel's effectiveness until the habeas proceedings. (Id.) Petitioner is wrong.

The exhaustive briefing by the State demonstrates that Georgia law did not preclude Petitioner from bringing his claim on direct appeal. In fact, Georgia law dictates quite the opposite. Because the law so clearly contradicts Petitioner, the Court quotes at length an opinion from the Georgia Supreme Court holding that an indigent prisoner claiming ineffective assistance of counsel on direct appeal has a right not only under the United States Constitution, but also under the Georgia Constitution, to new counsel:

Appellant is entitled under the United States and Georgia Constitutions to effective assistance of counsel at trial. Appellant's right to effective assistance of counsel extends to a direct appeal from his criminal conviction. Because appellant was found to lack the financial resources to retain counsel, the State was required to provide counsel for his trial, and for his first appeal as a matter of right. Appointed counsel, no less than retained counsel, is required to provide effective assistance. Effective counsel is counsel free from conflicts of interest.

Under well-established Georgia law, appellant was required to raise any issue of ineffective assistance of trial counsel at the earliest practicable moment to avoid it being deemed waived. This requirement that an ineffectiveness claim be made at the earliest practicable moment is a requisite of a sound system of criminal justice, serving alike the proper ends of defendants and the public . . . . By earliest practicable moment, we mean that the ineffectiveness claim must be raised *before appeal* if the opportunity to do so is available.

However, appellant's trial counsel could not reasonably be expected to assert or argue his own ineffectiveness on appeal. Counsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question.

Appellant does not have the right to be represented by counsel and also to represent himself. Accordingly, appellant could not assert a pro se claim of ineffective assistance while represented by counsel. Hence, appellant's trial counsel appropriately raised this issue on behalf of his client and then sought, consistent with our holding in White v. Kelso, to be removed from representing appellant. Appellant's ensuing request that

conflict-free counsel be appointed to represent him was necessarily predicated on his constitutional right to effective counsel on appeal. We need not decide whether the trial court, in denying appellant's request, correctly comprehended the policies of the Council regarding appointment of conflict counsel because the Constitutions of the United States and Georgia, not the Council's policies, are the governing authority here. **We hold that appellant was entitled to representation on appeal by effective, i.e., conflict-free, counsel as a matter of constitutional law.**

. . . .

Appellant was constitutionally entitled to the appointment of conflict-free counsel to represent him on appeal. **We therefore reverse the decision of the Court of Appeals and remand the case for the trial court to consider appellant's allegation of ineffective assistance under the representation of new counsel.**

Garland v. State, 657 S.E.2d 842, 843-44 (Ga. 2008)(emphasis added)(internal citations and quotation marks omitted).

This Court cannot overlook such clear precedent by the Georgia Supreme Court. Petitioner's argument that he had to wait until collateral proceedings to challenge his representation fails. He clearly could have made his new ineffective assistance of trial counsel claims before he filed his state habeas petition. Indeed, he had a right, according to the Georgia Supreme Court, under the Georgia and Federal Constitutions to make such an argument with the assistance of

effective, conflict-free counsel. Because Petitioner has not established that Georgia explicitly prohibits raising ineffective assistance of counsel on direct appeal or denies "most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal," this Court will not excuse Petitioner's procedurally defaulted ineffective assistance of trial counsel claim.

## 2. Actual Innocence Gateway Exception

Petitioner also argues that the actual-innocence gateway exception excuses his procedurally defaulted ineffective assistance of trial counsel claim. (Doc. 78 at 58.) The Court first notes that this alternative argument has no effect on Petitioner's request for supplemental counsel. It is instead an alternative theory for excusing his procedurally defaulted ineffective assistance of trial counsel claim.

The actual-innocence gateway exception allows a prisoner who would otherwise be barred from bringing a constitutional claim in federal habeas court because of procedural default to bring his claim if he can make a proper showing of actual innocence. Rozzelle v. Sec'y Florida Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012). The exception applies to both procedurally defaulted claims as well as untimely claims under the AEDPA. Id. It is a result of the equitable nature of habeas proceedings, which prioritizes the desire to avoid a "fundamental miscarriage of justice," such as incarcerating an

innocent person, over the need for finality and comity of state court decisions, such as respect for the doctrine of procedural default. See Smith v. Murray, 477 U.S. 527, 537-38 (1986). Thus, the actual innocence gateway should open only upon the exceptional case where the probability of actual innocence is high. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1936 (2013).

To be clear, the actual-innocence gateway exception is not a freestanding actual-innocence claim. It is only a method by which a prisoner may obtain review of an otherwise unreviewable claim. Procedurally defaulted or time-barred claims may only gain entrance through the actual-innocence gateway "'where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.'" Herrara, 506 U.S. at 404-05 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 456 (1986)(emphasis in original)). In other words, "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id.

To establish an actual-innocence exception to his procedurally defaulted claim, Petitioner must "(1) present new reliable evidence . . . that was not presented at trial and (2) show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Rozzelle, 672 F.3d at 1011 (internal citations and quotation marks omitted). "This 'new' evidence must do more than

25

counterbalance the evidence that sustained the petitioner's conviction. [It] must be so significant and reliable that, considered with the trial record as a whole, it undermines confidence in the result of the trial such that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. (internal citations and quotation marks omitted). Additionally, the new evidence must establish "factual innocence, not mere legal insufficiency" of guilt. Bousley v. United States, 523 U.S. 614, 623 (1998)(emphasis added).

### a. "New" Evidence

The first determination the Court must make is whether the evidence presented by Petitioner is "new". Petitioner claims that his evidence is "new" because it was not presented at trial. Respondent, however, claims that the evidence was not "new" because it was available to be presented at trial.

The parties' dispute arises from vague language in Schlup v. Delo, 513 U.S. 298 (1995). In Schlup, the Supreme Court held: "To be credible, [an actual-innocence claim] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Id. at 324. It also noted that "the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the

26

probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 327-28. The Court did not, however, clarify whether "new evidence" meant merely evidence not presented at trial or evidence not presented at trial that was also not available to be presented at trial.

Currently, there exists a significant circuit split on the issue. On one side are those circuits that agree with Petitioner: New evidence is merely evidence not presented at trial, regardless of whether or not it could have been presented. Gomez v. Jaimet, 350 F.3d 673, 679-80 (7th Cir. 2003)("Particularly in a case where the underlying constitutional violation claimed is the ineffective assistance of counsel on a failure to present evidence, a requirement that new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway."); Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003) ("[W]e hold that habeas petitioners may pass Schlup's test by offering 'newly presented' evidence of actual innocence."). On the other side are those circuits that agree with Respondent: New evidence must be evidence not offered at trial and not available to be offered at trial. Wolfe v. Johnson, 565 F.3d 140, 170 (4th Cir. 2009) ("Thus, under controlling precedent, the evidence supporting a showing of actual innocence need not be admissible at trial, but merely relevant and previously unavailable."); Goldblum v. Klem, 510 F.3d 226 n.14 (3rd Cir. 2007) ("Evidence

is not 'new' if it was available at trial, but a petitioner merely chose not to present it to the jury.")(internal quotation marks omitted)); Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) ("The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of diligence.").

The Eleventh Circuit has not yet entered the fray. Indeed, they have consciously chosen to stay clear of the melee. See Rozzelle, 672 F.3d at 1018. But because the parties raise the issue, this Court must pick a side. Thus, it now sides with Respondents and holds that "new evidence" for purposes of establishing an actual-innocence gateway exception to procedurally defaulted and time-barred claims means evidence that was "not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine, 128 F.3d at 1230. This decision puts this Court in accord with at least one other district court in this Circuit. See Gray v. Daniels, No. 7:14-cv-00271-RDP-TMP, 2015 WL 4641512, *6 (N.D. Ala. Aug. 4, 2015)("This Court believes 'new' evidence must be evidence that petitioner did not possess or know about at trial and could not have known about with the exercise of diligence.").

The Court concludes that the restricted definition of "new" is superior for two reasons. First, the restricted definition best fits within the Supreme Court's textual demand. Although

the Supreme Court did not specifically address whether the evidence must not have been presented and not available to be presented, it did say that the "reviewing tribunal [may] consider the probative force of relevant evidence that was either excluded or unavailable at trial."  Schlup, 513 U.S. at 327-28.  The use of "unavailable or excluded" indicates that the Court was referring to evidence that was not available at trial rather than evidence that was not presented at trial.  Had the Court desired to include within its definition of "new evidence" evidence that was merely not presented at trial, it would not have used such exclusionary language.

Second, the Court defines "new" narrowly because it assures that actual-innocence gateway exceptions will continue to be exceedingly "rare" and difficult to prove.  Were the Court to side with Petitioner, it would open the door for endless challenges to trial strategy and attorney error that would continuously call on courts to speculate about what a reasonable juror would have done had he heard certain pieces of evidence that could have been presented but were not.  The result would be lengthy and protracted litigation in every capital habeas case, because the petitioner could essentially force the state to retry his case in every instance that he failed to raise a constitutional claim.  Even if the petitioner failed, he would still succeed.  The time, effort, and energy needed to wade through such factually complex and intricate issues would

significantly slow the process and delay the imposition of justice. See Martinez, 566 U.S. at 23 (Scalia, J., dissenting)("[I]n capital cases, [lengthening federal habeas review] will effectively reduce the sentence, giving the defendant as many more years to live, beyond the lives of the innocent victims whose life he snuffed out, as the process of federal habeas may consume.").

The Court is mindful of the toll that such additional litigation would take upon judicial resources and our system of federalism. It sits on the frontlines of habeas litigation. It recognizes that each habeas claim, if it is to be treated fairly and justly, takes a considerable amount of resources to adjudicate. It also recognizes that state courts are courts of concurrent jurisdiction that are perfectly capable of faithfully interpreting the Constitution, see Taflin v. Levitt, 493 U.S. 455, 458-459 (1990) ("Under [our] system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); Martin v. Hunter's Lessee, 14 U.S. 304 (1816) ("[T]he judges of the state courts are, and always will be, of as much learning, integrity, and wisdom, as those of the courts of the United States, (which we very cheerfully admit,). . . . "), and that every time this Court unnecessarily reviews a state court's application of federal law, it diminishes and challenges their

role within our federal system. <u>Martinez</u>, 566 U.S. at 26 (Scalia, J., dissenting) ("[F]ederal habeas review imposes [significant costs] on States, including the 'reduction in the finality of litigation and the frustration of both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."). Thus, this Court will be careful when expanding the reach of its habeas jurisdiction, and it will not do so absent clear instruction from either the Eleventh Circuit or the United States Supreme Court.

### b. Petitioner's Evidence

The Court now examines whether Petitioner's evidence was not presented at trial <u>and</u> was not available to be presented at trial. Petitioner cites the following as "new evidence": (1) Petitioner falsely confessed to killing Marni Glista and Tiffaney Wilson (doc. 78 at 2); (2) A tape recording of investigators' initial interview with Petitioner demonstrates that Petitioner's initial confession was coerced and that the investigators were not being truthful (<u>id.</u> at 22); (3) A person other than Petitioner must have attacked Sgt. Glista because investigators found a grown pit bull roaming Sgt. Glista's house and neighbors claimed it would have attacked a person with whom it was not familiar (<u>id.</u> at 13); (4) The doctor who conducted the autopsy believed that marks on the back of Sgt. Glista were consistent with a stun gun and requested that they be further

analyzed, but no further analysis was conducted after Petitioner confessed to Sgt. Glista's murder (id. at 16-17); (5) The prosecution's use of Petitioner's confession to the murder of Tiffaney Wilson was critical to convicting Petitioner, but Petitioner's confession was inconsistent with the facts surrounding Ms. Wilson's death and could not have been true (id. at 31-37, 40-43); and (6) The prosecution relied upon Philip Henschel's testimony to corroborate Petitioner's confession that he killed Tiffaney Wilson, but Mr. Henschel's testimony was riddled with inconsistencies (id. at 43).

None of this evidence, however, is "new." All of this evidence was available at the time of the trial. Petitioner admits that (1) "trial counsel was in possession of evidence that dramatically undermined Mr. Rivera's recitation of [Ms. Wilson's murder]" (doc. 78 at 37 (emphasis added)); (2) trial counsel failed to "investigate and develop readily available evidence within their possession" that Mr. Rivera's version of description of Ms. Wilson's murder could not have been accurate (id. at 37-40 (emphasis added)); (3) "[t]rial counsel had in their possession information that discredited . . . the testimony of Phillip Henschel" (id. at 51 (emphasis added)); (4) "[h]ad [trial counsel] hired a forensic pathologist to review the autopsy report and evidence considered by [the state pathologist] they would have learned of several facts that were inconsistent with Mr. Rivera's [confession to murdering Ms.

Wilson]" (id. at 41); (5) trial counsel "should have known" about the tape recording of Mr. Rivera's first interview with investigators because they possessed a "property receipt reflecting its submission to the evidence room and its last known possessor, Investigator Roundtree" (id. at 22); and (6) "[trial counsel] had in their possession . . . . details about law enforcement's investigation of Marni Glista's murder . . . that indicate the perpetrator was a person familiar to Sgt. Glista and her adult pit bulls, who may have used a stun gun in the attack, rather than Mr. Rivera, a stranger who appears not to have had a stun gun" (id. at 3 (emphasis added)).

Indeed, the whole thrust of Petitioner's motion to appoint supplemental counsel is that state habeas counsel was ineffective because it failed to claim that trial counsel was ineffective for failing to use the evidence described above to acquit Petitioner. Petitioner asserts that "[t]rial counsel in the matter ignored reliable evidence in the discovery materials the State disclosed prior to trial which significantly undermine the credibility of Mr. Rivera's confessions and indicate that he falsely confessed to the murders of [Sgt. Glista] and [Tiffaney Wilson]." (Doc. 78 at 2.) Petitioner further asserts that after reviewing the record, his federal habeas counsel concluded that "trial counsel provided ineffective representation in failing inter alia to investigate and develop exculpatory evidence demonstrating that Mr. Rivera falsely confessed to murdering

33

Marni Glista and Tiffaney Wilson." (Id. at 3.) Not once does Petitioner claim that newly discovered evidence demonstrates his innocence. Petitioner's entire claim is based upon previously existing evidence that trial counsel had in its possession but failed to use. Thus, none of Petitioner's evidence is "new," and Petitioner cannot use the actual innocence gateway exception to excuse his procedurally defaulted ineffective assistance of trial counsel claim.

## IV. Conclusion

In his amended petitions, Petitioner asserts four new claims. The Court **DENIES** three of Petitioner's four new claims.[2] (Docs. 41 & 71.) The Court denies Petitioner's lethal-injection claim because it violates the AEDPA statute of limitations and is not cognizable in a habeas proceeding. It denies Petitioner's actual-innocence claim because an actual-innocence claim is not cognizable under the United States Constitution. And it denies Petitioner's new ineffective assistance of trial counsel claims because they are barred by the AEDPA statute of limitations and are procedurally defaulted. It allows to proceed, however, Petitioner's cumulative error claim. Finally,

---

[2] The Court also **ORDERS** the Clerk to **TERMINATE** Motion Requesting a Ruling. (Doc. 95.) The Court also **ORDERS** THE Clerk to **UNSEAL** all documents related to Petitioner's Motion to Appoint Supplemental Counsel (docs. 78, 86, & 91).

the Court **DENIES** Petitioner's motion for supplemental counsel.
(Doc. 78.)

**ORDER ENTERED** at Augusta, Georgia, this _6th_ day of
December, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA