IN THE SUPERIOR COURT FOR THE COUNTY OF RICHMOND

STATE OF GEORGIA

STATE OF GEORGIA,              )
                               )
                               )  INDICTMENT
vs.                            )  00 RCCR-1335
                               )
REINALDO J. RIVERA,            )  EXPARTE HEARING
        Defendant.             )

— — — — —

**HEARD BEFORE THE HONORABLE ALBERT M. PICKETT**

JUDGE, SUPERIOR COURTS

AUGUSTA JUDICIAL CIRCUIT

Columbia County Courthouse

Appling, Georgia

February 5, 2001

— — — — —

**APPEARANCES OF COUNSEL:**

FOR THE STATE:            MS. ASHLEY WRIGHT
                          Assistant District Attorney
                          551 Greene Street
                          Augusta, Georgia   30901

FOR THE DEFENDANT:        MR. PETER D. JOHNSON
                          Attorney at Law
                          445 Walker Street
                          Augusta, Georgia   30901

                          MR. JACQUE HAWK
                          Attorney at Law
                          339 Telfair Street
                          Augusta, Georgia   30901

---

**NANCY H. CULPEPPER, OFFICIAL COURT REPORTER**
Augusta Judicial Circuit
Room 205, 530 Greene Street
Augusta, Georgia   30901
(706) 821-2387

```
 1    [Appling, Columbia County, Georgia; Monday, February 5, 2001,
 2    in chambers.]
 3              THE COURT:  ...counsel in chamber, me talking to
 4    defense counsel in chambers?
 5              MS. WRIGHT:  Guess not.
 6              MR. JOHNSON:  Guess not.
 7              THE COURT:  All right.  I want Mr. Rivera in
 8    there with us.
 9              MR. JOHNSON:  Yes, sir.
10              THE COURT:  Would you mind cuffing him, please?
11    I want security with us.  And objection to that?
12              MR. JOHNSON:  No, sir.
13              THE COURT:  All right.  Let me talk to the
14    officers a minute.  You're here just as security.
15    Anything that is said during this conference in the
16    presence of the defendant -- it's going to be on record.
17    I'm instructing you to have no conversation with anybody
18    about any aspect of it.  Do y'all understand?
19              THE BAILIFFS/SECURITY:  Yes, sir.
20              THE COURT:  All right.
21              MR. JOHNSON: The only possible explanation that I
22    could think of would be that Ms. Poteat at some point
23    will argue to the jury that Mr. Rivera showed genuine
24    remorse at the earliest opportunity and cooperated with
25    law enforcement and gave a full and complete disclosure
```

-1-

of the facts. If she argues that in mitigation, then I can understand that. It may be that that would be a strategy that we would have to employ after we determine that these statements cannot be suppressed in any fashion, after we determine that we'll have to work with what he said to the police. It's just that it is so premature at this stage to make that call that I was, quite frankly, astounded that she did it and did it without consulting me.

**THE COURT:** Now what is the area that you mentioned where you thought you could be in conflict with it? That?

**MR. JOHNSON:** That, yes, sir. That. Apparently she's decided, okay, it's --

**THE COURT:** My question to you, though, is even if she were here, with that difference in strategy, that wouldn't affect the way you're handling the Georgia case, would it?

**MR. JOHNSON:** I wouldn't think so, no.

**THE COURT:** So --

**MR. JOHNSON:** Do you want us to invite her here?

**THE COURT:** My only concern is with his South Carolina defense really. I don't know why I'm taking up our Court time to concern myself with his South Carolina defense, but I think his South Carolina lawyer needs to

-2-

```
 1    be over here listening, taking notes, realizing that
 2    this is sworn testimony that could possibly affect her
 3    South Carolina defense.
 4         MR. JOHNSON:  She'll have access to transcripts.
 5         THE COURT:  I understand that she will.  I think
 6    we're okay, but it's just a matter of trying to be
 7    careful.
 8         MR. JOHNSON:  Yes, sir.
 9         MR. HAWK:  --  Judge, that's the --
10         THE COURT:  It's going to be too late to get her
11    over here today.  It's a matter of in the future.
12         MR. HAWK:  The only thing that concerns me about
13    this is that it was made clear to Peter that yes, we put
14    her on the list and give her access to Ray, you know, to
15    be able to see him, but we wanted also to know what was
16    going on and to make sure that she did not do anything
17    that interfered with our defense of him in the Georgia
18    case.  And that was the agreement that we understood she
19    was going to operate under and that she would let us
20    know if she had any plans for him or anything like that.
21    Now unbeknownst to us, she gives an investigator with a
22    video camera, a recorder and everything and goes and
23    gives him a complete confession on the Tiffaney Wilson
24    case, all of that without any notice to us, without us
25    knowing anything, and we think that it's interfering
```

1     with out ability to represent him.

2     **MR. JOHNSON:** What we did learn subsequent to it
3     is that she very carefully tailored the interview to
4     only talk about Tiffaney Wilson, but I'm not sure how,
5     why that's a distinction in her mind.

6     **THE COURT:** Does she understand the similar
7     transactions concept? Do they have it over in Carolina?

8     **MR. JOHNSON:** Yes. I'm sure she understood that,
9     yes, sir. And it's interesting -- you can tell that the
10    police investigator is very uncomfortable as well, with
11    his role as adjunct to the public defender. And I think
12    I recall some discussion about the Tiffaney Wilson
13    family wanting - quote - closure. We all hear about the
14    closure, I believe that that had something to say as
15    well.

16    **MR. HAWK:** And another issue, too, is Rey, when
17    he gave this statement, was under the impression that
18    Ms. Poteat had spoken to us and that this was what we
19    wanted. When it wasn't at all.

20    **MR. JOHNSON:** It's clearly inconsistent with what
21    I had been trying to do up until that point, which was -
22    -

23    **MR. HAWK:** And this was after Pete had said no
24    more --

25    **THE COURT:** Which was keep --

-4-

```
 1            MR. JOHNSON:  Stop the flood of conversation.
 2            MR. HAWK:  Cause it's not like --
 3            THE COURT:  Had you instructed Mr. Rivera to say
 4   nothing to anyone?
 5            MR. JOHNSON:  No, sir.  I honestly did not think
 6   it necessary at that point.
 7            THE COURT:  So prior to that, you had not given
 8   him specific instructions that it was your advice for
 9   him to say nothing to anyone?
10            MR. JOHNSON:  Well, I never specifically said you
11   shouldn't talk to your lawyer in South Carolina, because
12   that's exactly how I represented, how I presented Ms.
13   Poteat to him.  I said this is your lawyer, she'll be
14   defending you in South Carolina.  So I'm sure he felt
15   that whenever she came to him again, that he should do
16   what she wanted him to do.
17            THE COURT:  All right.  My next and final
18   question would be did you instruct Mr. Rivera that he
19   was not to give any statements to any investigator
20   henceforward without your knowledge, advice and consent?
21            MR. JOHNSON:  I did, but I either implicitly or
22   directly told him police investigator.  I'm sure I did
23   not think to include a defense attorney.
24            THE COURT:  All right.
25            MR. JOHNSON:  A defense attorney who brought a
```

```
 1    police investigator to him.
 2            THE COURT:  Okay.  Let's take a few minutes'
 3    break ourselves and come back.
 4            [Upon completion of the Unified Appeal Hearing a
 5    brief recess is taken.]
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                    C E R T I F I C A T E
 3
 4    G E O R G I A
 5    COLUMBIA COUNTY
 6
 7         I, Nancy H. Culpepper, Certified Court Reporter,
 8    CCR-A43, hereby certify that I reported the EXPARTE hearing
 9    as stated in the caption and supervised a true, accurate and
10    complete transcript of the proceedings as contained in the
11    foregoing pages 1 through 7.
12         I FURTHER CERTIFY that I am not a party to, related to,
13    nor interested in the event or outcome of such proceedings.
14         WITNESS my hand and official seal this 20th day of
15    February, 2001.
16
17
18
19                    _____
20                    NANCY H. CULPEPPER, CCR-A43
21                    CERTIFIED COURT REPORTER
22
23
24
25
```