In the United States District Court
Southern District of Georgia, Augusta Division

_____

Reinaldo Javier Rivera,

*Petitioner*,

v.

GDCP, Warden,

*Respondent*.

_____

**RESPONSE TO PETITIONER'S SUPPLEMENTAL BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

_____

Christopher M. Carr
  *Attorney General of Georgia*
Beth A. Burton
  *Deputy Attorney General*
Sabrina D. Graham
  *Senior Assistant Attorney General*


Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 694-7975
sgraham@law.ga.gov

*Counsel for Respondent*

1

COMES NOW Warden, Georgia Diagnostic and Classification Prison, Respondent in the above-styled action, by and through counsel, Christopher M. Carr, Attorney General for the State of Georgia, and files this *Response to Petitioner's Supplemental Brief in Support of Petition for Writ of Habeas Corpus* by showing and stating the following:

The Court has asked the parties to supplement their final merits briefs and answer the following questions:

1. Did Respondent expressly waive the exhaustion defense? 28 U.S.C. § 2254 (b)(3); *see also Wood v. Milyard*; 566 U.S. 463, 472-73 (2012) (reversing lower court's sua sponte consideration of procedural defense despite state's intentional waiver and "deliberate decision to proceed straightaway to the merits.") (citing *Day v. McDonough*, 547 U.S. 198, 209 (2006) and *Cranberry v. Greer*, 481 U.S. 129, 135 (1987)).

2. Does cause and prejudice exist to excuse Petitioner's failure to exhaust the claim trial counsel was ineffective for failing to object to inappropriate comments by the prosecutor?

3. Is there merit to the claim trial counsel was ineffective for failing to object to inappropriate comments by the prosecutor?

## I. Respondent has not expressly waived his exhaustion defense.

Contrary to Petitioner Reinaldo Rivera's arguments, Respondent has not, and is not, attempting to rescind an express waiver of exhaustion for Rivera's newly plead ineffective assistance of counsel claims. In Rivera's final merits brief, he implicitly amended his petition with new ineffective assistance claims regarding objections trial counsel should have allegedly made in response to specific arguments made by the prosecutor. Therefore, the first opportunity that Respondent had to raise his exhaustion defense to these claims was in his response to Rivera's final merits brief, which Respondent did. None of Rivera's arguments prove that Respondent had a duty to raise an exhaustion defense in an answer to a claim that had yet to be raised. Thus, Respondent has not waived his exhaustion defense to Rivera's newly plead claims.

In Claim One of his amended state habeas petition, Rivera alleged:

Counsel failed to make adequate or timely objections to … improper and prejudicial comments and mischaracterization of evidence at closing argument at the guilt-innocence and sentencing phases of trial;

Counsel failed to adequately object to the prosecutor's use of impermissible inferences during closing argument and failed to adequately argue any motion for a mistrial;

D31-4:8.

Rivera did not cite to any portion of the record in his amended petition, nor did Rivera later brief this issue in his post-hearing briefing. *See* D37-8; D37-14. The state habeas court denied all his ineffective assistance of counsel claims. *See* D37-16:86. Rivera did not raise this claim in his application for certificate of probable cause to appeal (CPC) to the Supreme Court of Georgia. D37-21:4; D38-22:1.

In Claim I(v), (w) of his amended federal habeas petition, Rivera made the same general ineffective assistance subclaims as he did in state habeas:

> v) Counsel failed to make adequate or timely objections to … to improper and prejudicial comments and mischaracterization of evidence at closing argument at the guilt-innocence and sentencing phases of trial;

> w) Counsel failed to adequately object to the prosecutor's use of impermissible inferences during closing argument and failed to adequately argue any motion for a mistrial.

D41:14. Because these general subclaims were raised in Rivera's state habeas petition and denied by the state habeas court, Respondent had no choice but to state the general subclaims were before this Court on the merits in his answer. D42:18-19.

Then, for the first time, in Rivera's final merits brief to this Court, he raised new claims regarding trial counsel's failure to object to specific alleged improper comments by the prosecutor in closing

arguments for both phases of trial.[1] "The exhaustion requirement applies 'not only to broad legal theories of relief, *but also to the specific assertions of fact that might support relief.*'" *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1135 (11th Cir. 2022) (emphasis added) (quoting *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004)). As explained by the Eleventh Circuit, the Court "'require[s] that petitioners present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis *and specific factual foundation.*'" *Id.* (quoting *Kelley*, *supra* at 1344-45) (emphasis).

There is no way that the state courts could have understood the "specific factual foundation" for Rivera's ineffective assistance claims regarding failure to object to specific prosecutorial arguments because he never plead them in state court. Neither the state courts nor Respondent had a duty to cull the record and guess what arguments made by the prosecutor a petitioner was generally complaining about in his petition. Thus, if the state courts could not have understood Rivera's claim in order to rule on it, then neither could Respondent

---

[1] To be clear, Respondent is not arguing these claims are unexhausted merely because Rivera failed to raise them in his CPC brief to the Supreme Court of Georgia, but because he failed to raise them *at all to any* state court. Therefore, Rivera's arguments about what has to be included in a CPC application are irrelevant because he didn't raise the claims in the lower state habeas court.

have understood Rivera's new claim in order to raise exhaustion in the answer. Any other conclusion based on this record would place the onus on the state courts and Respondent to conjure facts and law for a generalized claim. Given that such a conclusion has no basis in law, the first opportunity Respondent had to assert the exhaustion bar to Rivera's claims was when he finally pled them in his final merits brief, which Respondent did.

Rivera claims that other courts have held a Respondent expressly waived the exhaustion bar with the same factual scenario. He is mistaken because none of the cases involved a petitioner amending his petition in his final merits brief with a new claim to which the Respondent raises his exhaustion defense in the response brief. *See Dorsey v. Chapman*, 262 F.3d 1181, 1186-87 (11th Cir. 2001) ("*In supplemental briefing to this court, the state asserts for the first time* that Dorsey's Confrontation Clause and Due Process Clause claims have not been exhausted.") (emphasis added); *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 967 (11th Cir. 2016) ("On appeal, the state now claims its statement as to exhaustion, <u>supra</u> note 1, was an inadvertent mistake of fact and was not intended to expressly waive the exhaustion requirement."); *Kimbrough v. Fla. Dep't of Corr.*, 809 F. App'x 684, 691, 691 n.4 (11th Cir. 2020) ("the state noted that Kimbrough's competency claims were exhausted" in the district court

but on appeal stated they were unexhausted"). In the cases in this district that Rivera relies on, the facts are also different. In *Williams v. Warden,* No. 4:12-CV-00106, Respondent argued in briefing on exhaustion that the claims were unexhausted because they had not been raised in the CPC application, not because they were new claims. *See Williams v. Warden*, No. 4:12-CV-00106, D81:15. Also, in *Lee v. Warden,* Respondent did not argue that they were unexhausted because they were new claims. *See Lee v. Warden*, Case No. 5:10-CV-00017, D98:5-6 n. 3: D87:162-65, 179-80, 183-86, 224-26.

Rivera does not cite to any law that holds a Respondent has *expressly* waived exhaustion for a specific claim that was never raised before in a federal habeas proceeding. However, in at least one case in this district, similar facts led to the Court to find Respondent had not waived the exhaustion defense. *See Heidler v. Warden,* Case No. Case 6:11-cv-00109, D136:22 ("As the record shows, Heidler first raised this claim in his Brief in Support, dkt. no. 127, which precluded the State from arguing that the claim was unexhausted until now."). Essentially, Rivera seeks to put Respondent in the untenable position of predicting what specific claims he would raise from a general claim that he never bothered to argue in state court.

Neither *Day v. McDonough,* 547 U.S. 198 (2006) nor *Wood v. Milyard,* 566 U.S. 463 (2012) provide holdings contrary to Respondent's

argument.  As explained by the Eleventh Circuit, "[i]n *Day v. McDonough*, the Court determined that a district court was permitted to raise sua sponte a statute-of-limitations defense because the state had inadvertently concluded the petition was timely and, thus, had not expressly waived the defense."  *Vazquez*, 827 F.3d at 967 (citing *Day* 547 U.S. at 211).  Because the state had made an "inadvertent error" in date calculation the sua sponte ruling was allowed to stand.  *Day, supra.*  "By contrast, in *Wood v. Milyard*, the Supreme Court found a court of appeals abused its discretion by sua sponte considering a timeliness issue when the state had 'deliberately steered the District Court away from the question and towards the merits of [the] petition.'"  *Vasquez, supra* (quoting *Wood,* 566 U.S. at 474).

Here, Respondent has not "deliberately steered" the Court from the question of exhaustion but instead raised the issue as soon as Rivera plead his specific claim in his final merits brief.  *Wood, supra.*  And in both *Day* and *Wood*, the question before the Supreme Court was whether the district court had erred in sua sponte determining the claim was unexhausted, whereas here, Respondent has specifically raised the issue to the Court.

In sum, Respondent raised his exhaustion defense at the first opportunity, and Rivera has failed to prove otherwise.  This Court

should determine Rivera's newly plead ineffective assistance claims to be unexhausted.

## II. Rivera has failed to show cause and prejudice to overcome the default of his ineffective assistance claims.

An unexhausted claim is also procedurally defaulted if it is evident that any future attempt at exhaustion would be futile due to the existence of a state procedural bar. In Georgia, any claim that the petitioner reasonably could have raised in his original or amended state habeas petition but did not is barred as successive. O.C.G.A. § 9-14-51. "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Shinn v. Ramirez*, 596 U.S. 366, 142 S. Ct. 1718, 1727-28 (2022) (quoting *Coleman* v. *Thompson*, 501 U. S. 722, 750 (1991)).

Rivera's only assertion of cause is the alleged ineffective assistance of state habeas counsel based on *Martinez v. Ryan*, 566 U. S. 1 (2012). However, this Court has already determined that the *Martinez* exception does not apply in Georgia because state law "did not preclude" Rivera from challenging trial counsel's effectiveness on direct appeal.[2] *See* D96:21; *see also Shinn, supra* ("In *Martinez* v. *Ryan*, [],

---

[2] Rivera states that this Court decided this issue in a different "context" but deciding this issue in response to Rivera's request to raise a

this Court explained that ineffective assistance of postconviction counsel is "cause" to forgive procedural default of an ineffective-assistance-of-trial-counsel claim, *but only if the State required the prisoner to raise that claim for the first time during state postconviction proceedings.*") citation omitted) (emphasis added). Other than reiterating the same arguments this Court has already rejected, Rivera does not prove this Court should reconsider this issue. *Compare* D158:11-16; D78:53-56.

Therefore, as Rivera has failed to show cause to overcome the default of this claim, it remains unexhausted.

## III. Alternatively, Rivera's ineffective assistance of counsel claims fail under either § 2254 or de novo review.

If this Court determines that Rivera's claims are not an amendment of new claims to his federal petition and Respondent has expressly waived exhaustion to his claims, then, as Rivera concedes, his claims were decided by the state habeas court. D158:10 Therefore, the standard of review falls under 28 U.S.C. § 2254, and Rivera must show that the state habeas court's *Strickland* decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

different procedurally defaulted ineffective assistance claim does not make it inapplicable here. D158:11.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). Additionally, Rivera must overcome the highly deferential *Strickland* standard that assumes counsel has performed competently and Rivera bears the burden of refuting this assumption by proving deficient performance which resulted in errors that created a reasonable probability of a different outcome at trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Rivera has shown neither.

Rivera argues that trial counsel were ineffective for failing to object to certain arguments made by the prosecutor during closing arguments for both phases of trial. Under even just the *Strickland* standard, Rivera is already in the hole because he did not present any evidence in state court regarding counsel's reasons for not objecting. *Strickland* holds a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689 (quotation marks omitted). Moreover, not even the "failure to object to an obvious error" will always result in deficient performance." *Gordon v. United States*, 518 F.3d 1291, 1293 (11th Cir. 2008). Counsel may decide, for strategic reasons, not to object to an obvious error" because,

for example, an objection may "create[] an unfavorable impression of counsel or the defendant in the eyes of the judge or jury." *Id.*

Additionally, the United States Supreme Court has never held that a prosecutor's argument created a due process violation. Nearly fifty years ago in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, (1974), the Court agreed that review of a prosecutor's closing remarks in a collateral proceeding was a 'narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court." (Quoting *DeChristoforo v. Donnelly*, 473 F.2d 1236, 1238 (1st Cir. 1973)). Over a decade later, in *Darden v. Wainwright*, 477 U.S. 168, 181, (1986), the Court reiterated what it stated in *Donnelly* and explained that even if the prosecutor's remarks were "universally condemned," "[t]he relevant question [was] whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (Quoting *Donnelly* 416 U.S. at 643). However, despite the due process right articulated in these cases, the Supreme Court has never concluded a prosecutor's arguments alone created a due process violation.

*1. Guilt Phase Objections.* Rivera claims that the prosecutor's guilt phase closing argument "relied on innuendo and outright falsehoods that impermissibly and prejudicially misused the similar transaction evidence the State was allowed to introduce in the

culpability phase of trial." D158:20. Specifically, Rivera argues that the prosecutor's arguments in support of "the admission of similar transaction evidence, including the assault and murder of Tiffaney (sic) Wilson" was contrary to the arguments he made during sentencing phase closing argument. Rivera doesn't include a cite in this brief to the similar transaction arguments but in his previous brief he referred to a pre-trial hearing held November 2, 2000, during which the prosecutor made the following remarks:

> With respect to the way that the contact initially occurred which -- with each of the three victims we will be relying on statements by the defendant as to the first two events. Those are the two events where the women were unable to give statements and third event be relying on Ms. Chrisilee Barton's statement and a statement by the defendant. Basically what happened is that this defendant would go out looking for women or girls. He would approach any number of them and try to talk to them. He would explain that he was either new in town and/or attempting to start up either a[n] escort service or a modeling agency. He would try to bring these women into his confidence, allow them to trust him and then he would begin making sexually explicit comments and questions to them asking them about the personal details of their life, asking them what sort of sexual positions and acts they enjoyed and asking them would they be allowed -- would they allow him to photograph them either in lingerie or nude.

D35-5:97

Over three years later in January of 2004, the prosecutor made the

following arguments during guilt phase closing arguments,[3] which

Rivera complains about:

> He doesn't want you to know that, in fact, he is a stalker, as
> he said when he was talking about having attacked Marni
> Glista. Remember when he was talking about having
> attacked Marni Glista? He said, "I went to where she lived
> because I am a stalker." He didn't say, "I went there because
> she wanted to model for me."

> Now, when you realize what happened at Marni Glista's
> house, you will realize that this woman, Tiffany Wilson, was
> not likely, after having given birth two months before, to
> accommodate this monster in his desire to have her to model
> for him. And certainly it didn't happen in the time frame that
> he says that it did.

> But you do know some other facts about this case. Tiffany had
> given birth, as I said, two months before. Tiffany's car,
> according to Josh, was in fair condition. In fact, the next day,
> he had trouble starting it and he had to get some help in
> order to get it started.

> That's what happened to Tiffany Wilson. She wasn't looking
> for a modeling job, she needed help and she ran into a
> psychopath while she was trying to get help and he mutilated
> her.

D30-4:182.

Rivera, who bears the burden of proof, fails to show that the

information about the crimes that was known by the prosecutor before

---

[3] Rivera states this occurred "during sentencing summation" but he is
mistaken. D158:20.

the trial, when the prosecutor asked for the admission of the similar transaction evidence, was the same as after the presentation of evidence at trial. Also, law enforcement officers testified at trial that Rivera referred to himself as a "stalker" and Wilson's boyfriend testified that the car she was driving was in "fair" condition and that they "had some problems" with it. *See* D29-29:164; D30-6:71; D29-30:144.

Just as important, Rivera has not shown that trial counsel did not have a strategic reason for not objecting. Rivera testified during the guilt phase that he was guilty of raping and murdering Marni Glista and Tiffany Wilson. *See, e.g.,* D30-3:147-48, 154. Whether he forced the women to come with him instead of luring them to their death with promises of a modeling gig was irrelevant given his confession, trial counsel's concession of guilt during closing argument, and the request for a *guilty* but mentally ill verdict. *See id*; D30-4:164, 167. Rivera has failed to show that "no competent counsel" under the facts of his case would not have objected to this argument. *Zakrzewski v. McDonough*, 455 F.3d 1254, 1256 (11th Cir. 2006) ("failed to show that counsel's not objecting to the contested statements was a course that no competent counsel would have taken").

For much the same reason Rivera failed to show deficient performance, he has also failed to prove a reasonable probability of a

different outcome. Rivera and counsel conceded guilt, and he does not explain how an objection to this evidence would have changed the outcome of his trial. Again, whether he forced his victims or lured his victims, he admitted he was "stalker" who set out to find victims he could rape and murder. *See, e.g.,* D29-29:164; D30-6:7. And he was not convicted of kidnapping. *See Rivera v. State*, 282 Ga. 355, 355-56 ("A jury convicted Reinaldo Javier Rivera of one count of malice murder, three counts of rape, four counts of aggravated sodomy, four counts of aggravated assault, one count of burglary, and one count of possession of a knife during the commission of a crime in connection with the rape and murder of Marni Glista and the rapes of Chrisilee Barton and Tabitha Bosdell."). Failure to object to the prosecutor's argument, which the trial court instructed the jury was not evidence (*see* D30-5:34), that Rivera may have forced the women to come with him instead of luring them to their death with promises of a modeling gig would not have created a reasonable probability of a different outcome at trial.

Rivera also complains that the prosecutor allegedly "invoked community sentiment as a basis for convicting" him with the following passage:

> And what does the defendant say? Let's see, he was speaking about Tabitha Bosdell when he was — he was saying, "I had already sodomized her and raped her," and he says, "I'm still thinking I can get out of this some way." And he's thinking that his way out — he thought during this trial his way out

was to deceive this jury. Tell him no. Tell him the deception is over, the gig is up, the law is clear and that the verdict is strong. The verdict is strong as to speak as to how the people of this community feel about mutilating and raping and sodomizing and killing the young women of this community.

D30-4:196.

When read as a whole, the prosecutor's statement was not invoking community sentiment but instead asking the jury to send a message "to others that criminal activities will be punished." *Green v. State*, 244 Ga. App. 697, 698 n.8 (2000). That has long been an accepted argument in Georgia. *See, e.g., id.*; *Gibson v. State*, 283 Ga. 377, 381 (2008) (holding that it was appropriate for prosecutors to urge the jury to speak on behalf of the community and rid it of robbers and murderers). None of the cases cited by Rivera concern the argument made by the prosecutor here nor do they hold that trial counsel was ineffective for failing to object to a like argument. As long held by the Eleventh Circuit, "'it is axiomatic that the failure to raise nonmeritorious [objections] does not constitute ineffective assistance.'" *Marchetti v. Sec'y, Fla. Dep't of Corr.*, No. 22-14146, 2023 U.S. App. LEXIS 24521, at *3 (11th Cir. Sep. 14, 2023) (quoting *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994)). Thus, there is no basis to find trial counsel was ineffective.

Finally, Rivera argues that trial counsel failed to object to the prosecutor "incorrectly [stating] that Mr. Rivera bore the burden of

showing that he was guilty but mentally ill." D152:22. However, the prosecutor did not incorrectly state the law. The portions of the record Rivera refer to are the following:

> Indeed, in this case, you've heard the evidence, which I think you might find quite overwhelming. But I don't have the burden of proving any defenses of any criminal defendant. If a criminal defendant -wishes to raise a- defense in your court, then the burden of proof of coming forward with the evidence with regard to that defense is on that defendant. It is not left to the State of Georgia to prove or to disprove his defenses for him.

D30-4:161.

> The radiologist, Hayden Williams, found the defendant's PET scans to be normal. The PET scans were animated and colored by a person you never saw on the witness stand. You remember a little while ago before I sat down the first time I said to you, "I don't have to prove their defenses. They want to raise defenses, they come in with evidence." That's the requirement. I have to prove the State's case beyond a reasonable doubt, and that's the extent of the burden on the State of Georgia.

*Id.* at 188.

"Whether the defense offered is not guilty by reason of insanity or guilty but mentally ill, the prosecutor is "not required to accede to [defendant's] contention that he was [insane or] guilty but mentally ill, nor [is] he precluded from arguing vigorously his position that [defendant is] guilty."" *Durrence v. State*, 287 Ga. 213, 217-18 (2010) (brackets in original) (quoting *Spivey v. State*, 253 Ga. 187, 189 (1984)).

The prosecutor did not argue that Rivera had the burden of proving his guilt but that the State did not have to prove he was mentally ill. That is not a misstatement of law and Rivera does not provide any law to the contrary. Accordingly, because the prosecutor's argument was not improper, trial counsel cannot be held ineffective for failing to object. *See Marchetti, supra.*

*2. Sentencing Phase Argument.* Rivera argues that trial counsel should have objected during sentencing phase closing arguments to the prosecutor allegedly "improperly argu[ing] that the jury should impose the death penalty on behalf of the community; incorrectly t[elling] jurors that they would not be responsible for sentencing Mr. Rivera to death, though, if they did not, they would be responsible for his future victims; and liken[ing] the jurors to soldiers at war." D158:23-24. Again, the prosecutor did not make any improper arguments and trial counsel cannot be found to be ineffective for not objecting to proper arguments. *See Marchetti, supra.*

Rivera points to the following portion of the prosecutor's argument:

> *It now becomes your duty to impose the punishment that is most appropriate under the facts and the law for this level of criminality.* Your verdict should be the measured response of a civilized society to the savage treatment of these young women who died at the hands of the killer. As you look at the pictures of this defendant, with his children, even one at Disney World, you will realize that while these photographs of

the defendant and his family and as he enjoyed Disney World and other vacations that he made, that he was mutilating young women in his spare time. *As you speak for the people of this community, ladies and gentlemen of the jury, let your verdict say this, this is a case for the ultimate punishment of death.* I told you they would turn on you. I told you that they would try to 'cause you to think that you bear some of the responsibility for his acts. And you heard those words. And after they were uttered the second time, the Court stopped it. But you'll hear it during closing argument. You'll see the attempt to shift that responsibility from the killer to the jury. Do not be distracted by some suggestion that the responsibility for the punishment for this defendant's crimes lies entirely and solely on anyone other than that killer. Do not go there. Do not allow that to happen. Do not allow anyone to assign responsibility for these crimes and the appropriate punishment to anyone but him.

D30-7:8-9 (emphasis added).

Are you being asked to make a difficult decision in this courtroom? Of course you are. Americans have made difficult decisions throughout their history. That is how we have ensured that we have had a civilized society, so that we can live without the fear that our children will be mutilated at the whim of any serial killer. *Do you prefer to be elsewhere today, ladies and gentlemen of the jury? Of course you do.* Silly to suggest that you wouldn't prefer to be somewhere else.

*So would the young men who arrived on the beaches of Normandy in 1944.* And who suffered the slaughter there in order to see to it that freedom could live and that we could live with that sense of security that we hold dearest and sacred in our lives. So would the young men have loved to have been in school rather than in the mosquito-infested, rodent-infested jungles of Vietnam, but they understood that duty called and they served. *And they served us well so that we could have the quality of life and the safety and security that we enjoy in this country. Yes, people do, when duty calls, prefer to be elsewhere, but they pick up that*

*duty and they serve on behalf of those who cannot. That's who we are. We don't pass off responsibility. We take it and we perform honorably.*

*And what message will we send to the community today?* Indeed, I told you once before evil visited you during the past three weeks. He wore many disguises, and you stripped him of those disguises. Edmund Burke told us that the only thing that is necessary for evil -- evil -- to prevail is for good people -- good people -- to do nothing. This community will long remember what we did, what we did when we had the authority over the evil that you have stripped and revealed during the past few weeks.

In the end, ladies and gentlemen of the jury, a serial killer was brought to justice through the courage of a teenaged girl. In the end he was simply no match for a teenaged girl. All he wants you to believe about him -- and she mastered him. Crawling through her home, gripping to life, calling for and receiving heroic response from Sheriff's deputies and EMT's, her will to live became her killer's worst nightmare. How many lives did she save, ladies and gentlemen of the jury? How many lives did she save? We will never know. But we know that less than three weeks after he'd murdered Tabatha Bosdell that the killer was back at work in Aiken, South Carolina, seeking that bigger challenge.

If you give him the chance to kill again, ladies and gentlemen of the jury, if you give him the chance to kill again, then all of Chrissielee Barton's courage and all of her efforts to cling to life, to bring this killer to justice, will have been in vain.

*Beside determining what is the most effective means of incapacitation, you should ask yourselves who will we protect? Will you impose a verdict that protects only part of society, or most of it, and leaving the threat to some in our society? Indeed, is Chrisilee Barton his last victim? He says no.*

*Id.* at 11-13 (emphasis added).

> *Whose daughter will it be the next time? Ladies and gentlemen of the jury, you can prevent that question from having an answer. Only you. The police can't, I can't, the Court can't. Only you. By your verdict, you can tell us whether the killing has ended.*

> Ladies and gentlemen of the jury, this is a case where the death penalty is appropriate. I ask you to return that verdict as a considered judgment of a civilized society.

*Id.* at 21 (emphasis added).

Regarding Rivera's first complaint that the prosecutor urged the jury to impose a death sentence "on behalf of the community," the prosecutor's argument was not improper. D158:23-24. Under Georgia law, "[i]t is appropriate for the prosecutor to urge the jury to speak on behalf of the community." *Faust v. State*, 302 Ga. 211, 220 (2017). Rivera does not cite to any clearly established federal law, or indeed any precedent from the Eleventh Circuit, that even suggests the prosecutor's argument was improper. Therefore, where there is no improper argument, there can be no ineffective assistance for failure to object.

Rivera also claims that the prosecutor argued that the jury "would not be responsible for sentencing Mr. Rivera to death, though, if they did not, they would be responsible for his future victims." D158:24. Although the prosecutor told the jury that Rivera's crimes were not the jury's responsibility, they were his, the prosecutor was clear that the jury had a responsibility to fulfill in determining Rivera's sentence. *See*

D30-7:8 ("It now becomes your duty to impose the punishment that is most appropriate under the facts and the law for this level of criminality."); *see also id.* at 11-13. Thus, the prosecutor did not make the argument Rivera alleges or an improper argument.

Likewise, the prosecutor's argument that there could be future victims was not improper. On direct appeal, Rivera claimed "that the trial court erred in allowing the prosecutor to close with the rhetorical question, 'Whose daughter will it be the next time?'" *Rivera*, 282 Ga. at 365. The Supreme Court of Georgia determined that the "argument was a logical inference from Rivera's own testimony that he could not stop attacking young women in the same manner in which he had hurt and killed the victims and was clearly based on the evidence." *Id.* And, in the alternative, the court held that even if the argument had been improper, there was not "a reasonable probability that it changed the result of trial." *Id.* Therefore, as the prosecutor's argument was deemed proper by the state appellate court, trial counsel could not be ineffective for failing to raise a nonmeritorious claim.

Finally, Rivera complains that the prosecutor "likened the jurors to soldiers at war." D158:24. Read as a whole, the prosecutor acknowledged the difficult civil duty the jury was faced with in determining whether Rivera should receive a death sentence and that American soldiers had also answered difficult calls of duty. Rivera does

not cite to any state or clearly established federal law that holds this type of argument is improper.  Moreover, even if were inappropriate, given that Rivera asked the jury to give him a death sentence,[4] he doesn't explain how an objection would have created a reasonable probability of a different outcome.

Rivera has failed to show any *Strickland* violation; thus he has failed to prove the state court's summary denial of his claim was contrary to, or an unreasonable application of, clearly established federal law.

---

[4] Rivera testified to the following:

> My purpose is to, my ultimate purpose is to ask the jury to impose the penalty of death so that I never have the slightest chance, the slightest chance of ever being free again, because I couldn't stop before and I still can't stop. I just still fantasize about, about hurting people. I fantasize about, I fantasize about still hurting the same girls that I killed. That's how disturbing it is. I have fantasies about still killing them, not killing them, but still doing things to them. It doesn't stop.

D30-6:130.

## CONCLUSION

For the reasons set out above, this Court should find Rivera's newly plead ineffective assistance of counsel claims to be unexhausted or, in the alternative, without merit and deny federal habeas relief.

Respectfully submitted.

/s/ *Sabrina D. Graham*
Sabrina D. Graham

Christopher M. Carr            112505
   *Attorney General of Georgia*
Beth A. Burton                    027500
   *Deputy Attorney General*
Sabrina D. Graham            305755
   *Senior Assistant Attorney General*

Office of the Georgia
   Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-7659
sgraham@law.ga.gov
*Counsel for Respondent*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2024, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Sabrina D. Graham*
Sabrina D. Graham