IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| REINALDO JAVIER RIVERA,  )<br>  Petitioner,  )<br>  )<br>vs.  )<br>  )<br>GDCP WARDEN,  )<br>  Respondent.  ) | Case No. 1:13-CV-161<br><br>CAPITAL CASE |

**<u>SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF<br>PETITION FOR WRIT OF HABEAS CORPUS</u>**

Marcia A. Widder (Ga. 643407)
Georgia Resource Center
104 Marietta Street NW, Suite 260
Atlanta, Georgia 30303
Telephone: (404) 222-9202
Fax: (404) 301-3315
Email: grc@garesource.org
grc@garesource.org

COUNSEL FOR PETITIONER

Comes now the Petitioner, Reinaldo Javier Rivera, by and through undersigned counsel, and submits this supplemental reply brief to address the arguments advanced in Respondent's supplemental brief (D. 159) (hereinafter "RSB"), addressing the ineffective-assistance-of-counsel subclaims challenging trial counsel's failure to object to the prosecutor's improper closing arguments ("prosecutorial misconduct IAC subclaims").

I. **Respondent's Contention that He Did Not Waive Exhaustion Lacks Merit.**

Respondent claims that, because the prosecutorial misconduct IAC subclaims "were raised in Rivera's state habeas petition," he had no recourse other than to admit that the "general subclaims [regarding counsel's failure to object to the prosecutor's improper arguments] were before this Court on the merits in his answer." RSB 4. This is not accurate. Respondent could have moved to dismiss those allegations for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6),[1] or sought a more definite statement under Fed.R.Civ.P. 12(e).[2] Respondent chose to do neither.

---

[1] *See, e.g.*, *Oliver v. Dozier*, No. 2:18-cv-111, 2019 U.S. Dist. LEXIS 6984, *3 (S.D. Ga. Apr. 25, 2019) (noting that Respondent moved to dismiss for failure to exhaust state remedies and failure to state a claim); *Herring v. Camon*, No. CV210-094, 2010 U.S. Dist. LEXIS 136300, *1 (S.D. Ga. Nov. 15, 2010) (same).

[2] *See, e.g.*, *Alford v. Carr*, No. 4:18-cv-00166, 2019 U.S. Dist. LEXIS 103484, *2 (M.D. Ga. May 9, 2019) (noting that Respondent "moved for a more definite

Instead, he elected to concede that the prosecutorial misconduct IAC subclaims were properly before this Court for merits review. *See* Doc. 28 at 18; Doc. 42 at 18-19.

Any argument that a "claim was so bare and conclusory that [the state] could not determine exhaustion and truly waive it" needed to be made "in response to the 2254 petition." *Telamy v. Sec'y, Fla. Dep't of Corr.*, 789 Fed. App'x. 756, 758 (11th Cir. 2019) (per curiam). In *Telamy*, the Eleventh Circuit found that, before waiving exhaustion, "the state presumably examined the state record, and, in doing so, affirmatively concluded that it did not need to pursue the exhaustion defense." *Telamy*, 789 F. App'x at 758 (citing *Vazquez*, 827 F.3d at 967). In this case, Respondent did so not once, but twice, stating in his Answer-Responses to the original and amended habeas petitions that the prosecutorial misconduct IAC subclaims were "properly before this Court for review" and "were properly rejected on their merits by the state habeas corpus court." Doc. 28 at 15, 18, 20; Doc. 42 at 15, 18-19, 21. Moreover, as noted in Mr. Rivera's Supplemental Brief ("SB") at 4-5, Respondent alleged that Claim Six of the Amended Petition, raising cumulative error, was unexhausted. Doc. 42 at 9. This allegation clearly demonstrates that

---

statement and requested that Petitioner specifically identify the convictions he sought to challenge").

Respondent knew how to avail himself of the nonexhaustion defense and chose not to with respect to the prosecutorial misconduct IAC subclaims.

Respondent's answers to the original and amended petitions waived the non-exhaustion defense as to the prosecutorial misconduct IAC subclaims. "[T]o the extent that the [prosecutorial misconduct IAC] claim was vague . . . it was incumbent upon [Respondent] to use caution in the exercise of the [exhaustion] waiver." *Pike v. Guarino*, 492 F.3d 61, 72-73 (1st Cir. 2007). Having failed to do so, the State may not take back his waiver now.

Respondent seeks support from the discussion of the exhaustion requirement in *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1135 (11th Cir. 2022), and the case on which it relies, *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344, 1351 (11th Cir. 2004). RSB 5. In those cases, however, waiver was not an issue and the cases, accordingly, have no bearing on the question before this Court. In *Green*, "[t]he State, in its response to Green's petition, argued that the District Court was precluded from reviewing Claim III-H-4 because the claim had not been exhausted in the Florida state courts." *Id.* at 1131. Likewise, in *Kelley*, "the State *pled* lack of exhaustion in the district court . . . ." (emphasis added). Here, by contrast, Respondent twice asserted in his answer-responses that the prosecutorial misconduct IAC subclaims were exhausted and properly before the Court for merits review.

3

Respondent also urges that "[t]here was no way that the state courts could have understood the 'specific factual foundation' for Rivera's ineffective assistance claims regarding failure to object to specific prosecutorial arguments because he never plead [sic] them in state court" and "[n]either the state courts nor Respondent had a duty to cull the record and guess what arguments made by the prosecutor a petitioner was generally complaining about in his petition." RSB 5. But, Respondent, again, was the master of his fate, having drafted the final order the state habeas court signed verbatim. *See* Doc. 37-15 (Respondent's proposed order); Doc. 37-16 (habeas court's final order). Moreover, the claim that the prosecutor made improper arguments in his guilt and sentencing summations hardly required the state courts or prosecutor to "cull the record and guess what arguments" were improper. The subclaim references a specific and small portion of the record—closing arguments—and, like trial counsel, the prosecutor and state habeas court are presumed to know the law,[3] including the proper limits on prosecutorial argument. The prosecutor's closing argument transgressions, accordingly, were readily discernable from reading the prosecutor's summations. *See, e.g.*, *Farina v. Sec'y, Fla. Dep't of Corr.*, 536 Fed. Appx. 966, 984 (11th Cir. 2013) (finding appellate counsel ineffective for failing to

---

[3] *See, e.g.*, *Clark v. State*, 883 S.E.2d 317, 332 (2023); *State v. Alford*, 818 S.E.2d 668, 673 (Ga. App. 20218).

4

challenge prosecutorial misconduct where "[t]he blatant misconduct here . . . so infected critical aspects of a capital sentencing proceeding"); *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (noting that "[t]he [prosecutor's] improper comment was obvious on the record, and must have leaped out upon even a casual reading of transcript");[4] *see also Francis v. Spraggins*, 720 F.2d 1190, 1193 (11th Cir. 1983) ("[W]here the petitioner calls the state court's attention to ineffective assistance problems and the court examines the crucial aspect of counsel's representation, as in this case, the petitioner may relitigate the constitutional claim in federal court."). In this case, the state habeas court expressly observed that it had "consider[ed] all of Petitioner's allegations made in the habeas corpus petition and at the habeas corpus hearing and all the evidence and argument presented to this Court" in adjudicating Mr. Rivera's state habeas claims. D. 37-16:86. This

---

[4] In *Matire*, the Eleventh Circuit held that instances of appellate counsel's failure to challenge improper prosecutorial argument were properly before it, even though not all the improper comments had been raised in the district court, because the district court "had to examine the total performance of appellate counsel and the effect thereof, and thus would necessarily have considered the related comments, including the prosecutor's argument to the jury which itself was based on the evidence specifically challenged. To hold otherwise would require us to assume that the district court ignored its duty to assess counsel's total performance; it would require us to assume that the district court ignored its duty to evaluate any deficiencies in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." *Id.* at 1434.

necessarily included the prosecutorial misconduct subclaims Mr. Rivera had alleged in his state habeas petition and the prosecutor's closing arguments.

Respondent seeks to distinguish cases Mr. Rivera has cited, *Dorsey v. Chapman*, 262 F.3d 1181 1186-87 (11th Cir. 2001); *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 967; *Kimbrough v. Fla. Dep't of Corr.*, 809 Fed. Appx. 684, 691, 691 n.4 (11th Cir. 2020), on the ground that the state attempted to raise the exhaustion defense on appeal, rather than in district court. But, as in Mr. Rivera's case, the waivers in each of those cases occurred at the pleading stage in district court. *See Dorsey*, 262 F.3d at 1187 (finding an "explicit waiver of [the exhaustion] defense" where the State, in its answer to the habeas petition, "expressly declined to raise this defense"); *Vazquez*, 827 F.3d at 966-67 (state waived exhaustion in responding to habeas petition with "arguments as to the merits of [petitioner's] claims and expressly conced[ing] that [he] had satisfied the exhaustion requirement"); *Kimbrough*, 809 Fed. Appx. at 688 (finding that state waived exhausting in its response to petition by conceding the competency claim was exhausted and arguing that the state postconviction court properly denied the competency claim). Respondent has provided no reason to conclude that the timing of the state's attempt to retreat from its express waiver—whether, as here, in the

6

district court, or in those cases, on appeal—makes any difference, and Mr. Rivera can think of no reason why it should.[5]

Finally, Respondent tries to wiggle out of its waiver on the ground that it did not "deliberately steer[]" the Court towards the merits by expressly stating that the prosecutorial misconduct IAC claims were properly before the Court. RSB 8 (quoting *Vazquez*, 827 F.3d at 967, quoting *Wood v. Milyard*, 566 U.S. 463, 474 (2012)). But that is precisely what Respondent did. In his answers to both the original and amended petitions, Respondent recited the law governing exhaustion and, in his answer to the amended petition, he identified Claim Six as unexhausted. *See* Doc. 42 at 9. He then went on to state explicitly that the prosecutorial misconduct IAC subclaims had been adjudicated on the merits in state court and were properly before this Court for merits review. Doc. 28 at 15, 18, 20; Doc. 42 at 15, 18-19, 21. Respondent could not have steered this Court towards the merits of these allegations much more explicitly. Having done so, Respondent may not now seek to walk back

---

[5] Respondent argues that "similar facts led the Court [in *Heidler v. Warden*, No. 6:11-cv-00109 (S.D. Ga.)] to find Respondent had not waived the exhaustion defense. RSB 7. While in *Heidler* the court concluded that Respondent had not waived exhaustion with respect to a particular claim the petitioner had not raised in either its state or federal habeas petitions, *see Heidler* Order, D.136:22, in that same order, the court also found that Respondent had waived the exhaustion defense as to other claims by stating in its pleadings that they were properly before the court. *See, e.g., id.* at 27 n.5.

from the waiver simply because he regrets his earlier concession. *See, e.g.*, *Wood*, 566 U.S. at 466 ("A court is not at liberty . . . to bypass, override, *or excuse* a State's deliberate waiver of a limitations defense") (citing *Day v. McDonough*, 547 U.S. 198, 202, 210 n.11 (2006) (emphasis added).

**II.   The Prosecutorial Misconduct IAC Subclaims Are Not Procedurally Defaulted and, Even Assuming They Are, State Habeas Counsel's Deficient Representation Provides Cause to Excuse their Default.**

Respondent's argument that the prosecutorial misconduct IAC subclaims are irretrievably defaulted is based on a confusing mishmash of state and federal default rules, fails to address Mr. Rivera's arguments about why the subclaims are not defaulted, and disregards this Court's inherent authority to reconsider its past rulings. The Court should find that the subclaims are not defaulted for the reasons set forth in the Reply and Supplemental Brief and that, regardless, any default has been excused.

Respondent argues that the prosecutorial misconduct IAC subclaims are defaulted because "[i]n Georgia, any claim that the petitioner reasonably could have raised in his original or amended state habeas petition but did not is barred as successive." RSB 9. But where, as here, trial and appellate counsel are one and the same, trial counsel's ineffectiveness "in waiving an issue at trial or omitting an issue on appeal can . . . satisfy the 'cause' requirement of the 'cause and prejudice' test."

*Head v. Ferrell*, 554 S.E.2d 155, 160 (Ga. 2001) (citations omitted). Mr. Rivera raised the prosecutorial misconduct IAC subclaims in state habeas proceedings, Respondent conceded they were not defaulted and were properly before the court, and the state habeas court adjudicated them on their merits. Doc. 37-16 at 86. The claim thus was *not* defaulted under state law.

Mr. Rivera, moreover, further detailed in his supplemental brief why the prosecutorial misconduct IAC subclaims were also not defaulted in federal court—because they had been adequately pleaded under state rules and he was not required to brief them in his CPC application. *See* SB 10-17. Respondent has not addressed these arguments in his responsive brief.

Respondent's only argument against Mr. Rivera's request that the Court revisit its ruling that the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), do not apply to Georgia habeas cases is that this Court already decided the issue. This Court, of course, has "plenary power over it[s interlocutory orders] and may therefore reconsider, revise, alter or amend [them] at any time prior to final judgment.'" *Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 (11th Cir. 2014) (quoting *Hardin v. Hayes*, 52 F. 3d 934, 938 (11th Cir. 1995)). *See* Fed. R. Civ. Proc. 54(b) (district court's interlocutory rulings "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Mr. Rivera respectfully submits

that the Court's earlier ruling misapprehends the significant limitations imposed by Georgia courts in litigating trial counsel's ineffective representation on direct appeal and that reconsideration of the ruling is accordingly warranted.[6]

Respondent insinuates that the Supreme Court recently foreclosed the application of *Martinez* to Georgia habeas cases, quoting *Shinn v. Ramirez*, 596 U.S. 366 (2022), for the proposition that *Martinez* only allows state habeas counsel's ineffective representation to provide cause to excuse a default "*if the State required the prisoner to raise that claim for the first time during state postconviction proceedings*." RSB 10 (quoting *Ramirez*, 142 S. Ct. at 1728) (emphasis added by Respondent). Respondent has accurately quote *Ramirez* (which, like *Martinez*, was a habeas case arising out of Arizona, where IAC claims are uniformly relegated to postconviction). Nonetheless, Respondent's reliance on that quote is misleading, as "[o]ne year [after *Martinez* was decided], in *Trevino* [], th[e Supreme] Court held that this 'narrow exception' applies if the State's judicial system effectively forecloses direct review of trial-ineffective-assistance-claims." *Ramirez*, 142 S. Ct.

---

[6] In addition to cases already cited, Mr. Rivera directs the Court to *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277 (6th Cir. 2019), where the Sixth Circuit held that *Trevino* applies to habeas cases arising out of Ohio because state law precludes ineffective assistance claims on direct appeal that rely on evidence outside the record and thus "[p]ractically speaking, . . . makes it 'virtually impossible' for defendants to meaningfully raise an ineffective-assistance-of-trial-counsel claim on direct appeal if the claim relies on evidence outside the record."

10

at 1733 (citing *Trevino*, 569 U.S. at 428). Mr. Rivera has argued that *Trevino*'s expansion of *Martinez* applies to Georgia cases like his, where trial counsel and appellate counsel were the same, because state law forbids claims of ineffective assistance of trial counsel under these circumstances. Respondent has not explained why *Trevino* does not apply, given Georgia's clear *prohibition* on raising trial-level IAC claims under the common circumstances of this case, where trial counsel continued as counsel on appeal. Respondent's misleading citation to *Ramirez* only underscores the weakness of its opposition to Mr. Rivera's argument that *Trevino* applies to Georgia cases like Mr. Rivera's.

### III. Mr. Rivera's Prosecutorial Misconduct IAC Subclaims Have Merit.

Respondent argues that Mr. Rivera has not shown that trial counsel provided ineffective representation in failing to object to the prosecutor's improper arguments. In doing so, he suggests that the allegations are meritless because the Supreme Court "has never concluded that a prosecutor's arguments alone created a due process violation." RSB 12. But whether the Supreme Court has ever reversed on the basis of a prosecutor's improper argument has no bearing on whether Mr. Rivera's trial counsel performed deficiently in failing to object to the prosecutor's improper arguments and whether, in conjunction with counsel's other deficiencies, Mr. Rivera was prejudiced at guilt and/or sentencing. *See, e.g.*, *Pye v. Warden, Ga.*

11

*Diagnostic Prison*, 50 F.4th 1025, 1055 (11th Cir. 2022) (*en banc*) (discussing cumulative assessment of prejudice based on all of counsel's deficiencies pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984)), *cert denied sub nom Pye v. Emmons*, 144 S. Ct. 344 (Oct. 30, 2023)).[7]

### A.  Improper Guilt-Phase Arguments.

Respondent claims that Mr. Rivera cannot complain that counsel failed to object to the prosecutor's argument, based entirely on speculation and inconsistent with the State's earlier justification for the admission of similar transaction evidence, that Mr. Rivera had lied about his interactions with the victims and that, rather than persuading them to accompany him, he had instead attacked them out of the blue. According to Respondent, the State was not tied to arguments it had made three years before trial to persuade the trial court to allow the presentation of similar transaction evidence, and Mr. Rivera had not shown that the evidence known to the prosecutor at that time "was the same as after the presentation of evidence at trial." RSB 15. Respondent has pointed to no "new" evidence that would have justified the State's

---

[7] And, of course, lower state and federal courts *have* found constitutional due process error as a result of a prosecutor's improper arguments under the test the Supreme Court adopted in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). *See, e.g.*, *Romine v. Head*, 253 F.3d 1349, 1371 (11th Cir. 2001) (applying due process test and concluding that "[i]n view of all of the facts and circumstances, the prosecutor's improper argument in this case undermines our confidence in the sentencing result to such an extent that habeas relief is required as to the sentence").

12

changed theory of the case, and the prosecutor's argument in fact shows otherwise.[8]

Moreover, even though the State had moved for the introduction of the similar transaction evidence roughly three years before trial, *see* D. 29-5 at 12-25, the trial court did not rule on the motion until shortly before jury selection began in early January 2004, and, in fact, directed the State to draft the order it signed allowing admission of the similar transaction evidence. *See* Doc. 36-4 at 52-53 (transcript of Sept. 5, 2003 pretrial hearing); Doc. 29-6 at 60-63 (order dated November 21, 2003, admitting similar transaction evidence, which was submitted by the prosecution and provided *inter alia* that "each of the transactions offered was perpetrated by the defendant, is offered for appropriate purposes to show the bent of mind . . . and the course of conduct of the defendant, and shows a sufficient connection between the acts alleged in the indictment and the acts proffered so that proof of one tends to prove the others").[9]

---

[8] The prosecutor, for instance, argued that photographs of urine in the toilet demonstrated that Mr. Rivera had lied and that Sgt. Glista had left her frozen food in the car to run to the bathroom and, upon leaving it, "she encounters a psychopath in her home. Where she has only been alone for two days . . . ." Doc. 30-4 at 186. None of this evidence was "new" by any stretch. Nor did it justify the prosecutor's speculation that Mr. Rivera's version of what happened, on which the State had based both its prosecution and its argument for the admission of "similar" transaction evidence, was false.

[9] Respondent also argues that Mr. Rivera cannot win because "he did not present any evidence in state court regarding counsel's reasons for not objecting." RSB 11. But, counsel were aware that they would waive their objections if they were

13

Respondent's argues that any improper argument was not prejudicial, moreover, because "Mr. Rivera and counsel conceded guilt, and he does not explain how an objection to this evidence would have changed the outcome of his trial." RSB 16. But Mr. Rivera sought a verdict of "guilty but mentally ill." The prosecutor's misconduct in branding Mr. Rivera a liar, without any basis, tarnished his acceptance of responsibility and had a prejudiced his ability to obtain that verdict and, ultimately, a sentence less than death.

The State also claims the challenged arguments were actually proper. According to Respondent, it was not improper for the prosecutor to urge that jurors, with their verdict, should tell Mr. Rivera that "the deception is over, the gig is up, the law is clear and the verdict is strong . . . as to speak as to how the people of this

---

silent and they did make an objection during closing argument to the prosecutor's future dangerousness argument. Doc. 30-7 at 14. On appeal, the Georgia Supreme Court concluded the prosecutor's argument was not improper because it was based on the admitted evidence. *See Rivera v. State*, 647 S.E. 2d 70, 78 (Ga. 2007). Counsel's failure to object to other, more egregious arguments thus cannot be "strategic." To the contrary where there appears no "sound professional reason why defense counsel did not object to [a] pattern of repeated misconduct," a reviewing court should find that "counsel's failure to object was 'outside the wide range of professionally competent assistance.'" *Hodge v. Hurley*, 426 F.3d 368, 386 (6th Cir. 2005). *See, e.g., Smith v. Chandler*, 888 S.E.2d 171, 179 (Ga. 2023) ("We fail to see why a competent appellate attorney would have failed to raise and support such a claim[, that counsel were ineffective in failing to impeach a witness] under these circumstances. As the habeas court recognized, this claim was clearly stronger than the claims . . . [counsel] chose to raise at the motion for new trial stage and on appeal, which were easily rejected.").

14

community feel about mutilating and raping and sodomizing and killing the young women of this community." Doc. 30-4 at 196. Rather, Respondent contends, the prosecutor's words did not "invoke[e] community sentiment" and instead simply "asked the jury to send a message "to others that criminal activities will be punished,'" which, Respondent claims, "has long been an accepted argument in Georgia." RSB 17. But the prosecutor's words did precisely what Respondent claims they did not, inciting jurors to disregard their oaths and return a verdict consistent with the community's feelings "about mutilating and raping and sodomizing and killing the young women of this community." *See, e.g.*, *United States v. Beasley*, 2 F.3d 1551, 1559-60 (11th Cir. 1993) (prosecutor's repeated reference to the "war on drugs" and analogy to the trial participants being in a war were an improper "appeal by the prosecutor for the jury to act as 'the conscience of the community,' [that] were 'calculated to inflame'").

Remarkably, Respondent also insists that the prosecutor did not shift the burden to the defense to prove the affirmative defense of guilty but mentally ill, on the ground that the prosecutor was simply arguing that the State had no burden to prove Respondent's case. RSB 17-19. Respondent ignores both the facts and the law. The prosecutor told jurors, contrary to Georgia law, that "the burden of proof of coming forward with the evidence with regard to that defense [of guilty but mentally ill] is on that defendant." Doc. 30-4 at 161, 188. But Georgia law "places no burden

15

on a defendant to prove that he is . . . guilty but mentally ill. The burden is on the state to prove that defendant is guilty of the crime charged, including the requisite element of intent, beyond a reasonable doubt." *Keener v. State*, 334 S.E.2d 175, 178 (Ga. 1985).

Had counsel properly objected to the prosecutor's improper guilt phase arguments, there is a reasonable likelihood that the jury would have found that Mr. Rivera was guilty but mentally ill and /or that one or more jurors would have voted in favor of a sentence less than death at the penalty phase.

### B.     Improper Argument at Sentencing.

At sentencing, the prosecutor repeatedly implored the jury to impose the death penalty on behalf of and as a message to the community, likened the jurors to soldiers at war, and urged jurors that they had to kill Mr. Rivera in order to prevent future victims. *See* Doc. 30-7 at 8-9, 11-13, 21. Respondent suggests that all of these arguments were perfectly acceptable and claims that Mr. Rivera "does not cite to any state or clearly established federal law that holds this type of argument is improper. RSB 23-24. But Respondent's arguments simply ignore the decisional law

Mr. Rivera has cited in briefing to this Court, including from the U.S. Supreme Court.[10] *See, e.g.*, D. 142:197-200.

Because the prosecutor's argument "during the penalty phase were so prejudicial as to deprive [Mr. Rivera] of a fair penalty determination," this Court should "find that trial counsel had no reasonable basis for failing to object to the[] comments which left the jury with a fixed bias against [Mr. Rivera] based upon comments not grounded in evidence of record." *Cmwlth. v. Lacava*, 666 A.2d 221, 237 (Pa. 1995) (granting sentencing relief where "the sole purpose of the prosecutor's comments was to attempt to turn the jury's sentencing of appellant into a plebiscite on drugs and drug dealers and their destructive effect on society" and "to convince the jury to sentence appellant to death as a form of retribution for the ills inflicted on society by those who sell drugs").

## **CONCLUSION**

For the foregoing reasons, and those set forth in Mr. Rivera's opening, reply, and supplemental briefs, Mr. Rivera respectfully requests that the Court grant the

---

[10] Respondent, for instances, argues that Mr. Rivera pointed to no "clearly established federal law" indicating that the prosecutor improperly likened jurors to soldiers at war. But that is not accurate. In his corrected merits brief, Mr. Rivera directed the Court's attention to, *inter alia*, *Viereck v. United States*, 318 U.S. 236, 247-48 (1943), in which the Court found that the prosecutor had engaged in misconduct by imploring jurors to do their wartime duty. *See* Doc. 142 at 198.

writ of habeas corpus. He further requests, in the event relief is not granted outright, that the Court conduct oral argument on the issues presented herein. Should the Court not grant relief outright, Mr. Rivera respectfully requests that it grant an evidentiary hearing to address cause and prejudice as to any claims the Court finds procedurally defaulted and to hear evidence regarding the state habeas court's rulings.

Dated this 30th day of January, 2024.

Respectfully submitted,

/s/ Marcia A. Widder
Marcia A. Widder (Ga. 643407)
Georgia Resource Center
104 Marietta Street NW, Suite 260
Atlanta, Georgia 30303
Telephone: (404) 222-9202
Fax: (404) 301-3315
Email: grc@garesource.org
grc@garesource.org

COUNSEL FOR PETITIONER

18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| REINALDO JAVIER RIVERA,      )<br>    Petitioner,      )<br>      )<br>vs.      )<br>      )<br>GDCP WARDEN,      )<br>    Respondent.      ) | Case No. 1:13-CV-161<br><br>CAPITAL CASE |

## NOTICE OF ELECTRONIC FILING

This is to certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system which will send notification of such filing to the following:

    Sabrina Graham, Esq.
    Senior Assistant Attorney General
    sgraham@law.ga.gov

*/s/ Marcia A. Widder*
Marcia A. Widder (Ga. 643407)